**Commonwealth v. Tingley**

*Donald Williams,* for Commonwealth.

*William M. Panella, Assistant Public Defender,* for defendant.

HENDERSON, *P. J.,* August 22, 1977 — Before us is a motion to suppress certain evidence and an incriminating oral statement made by defendant. This motion is based upon two grounds. The first is that no valid consent was given for a warrantless search of a house during which evidence was discovered which lead to the arrest of the defendant. The other objection is that the incriminating oral statement made by defendant was the product of an unreasonable delay between his arrest and arraignment.

At the hearing on this motion, many facts were agreed to by stipulation. The only testimony introduced was by Lieutenant Charles Abraham, of the New Castle Police Department appearing for the Commonwealth.

Cast's Service Station on 716 W. Grant Street, New Castle, Pa. was burglarized sometime prior to 6 a.m. on April 8, 1977, and approximately 50 cartons of cigarettes were stolen. About 6:30 p.m. that evening John Cast, owner of the service station, came to the New Castle Police Department and told Lt. Abraham that his stolen cigarettes were being sold at the Montgomery residence at 902-C Crestview Terrace. This was verified by an agent of Cast's who had purchased some cigarettes from juveniles at that address.

Lt. Abraham and Cast, along with several other officers immediately went to the Montgomery residence without obtaining a search warrant. At the hearing, Lt. Abraham testified that a warrant was not obtained because Mr. Cast had said that if they waited the hour or so it would take to obtain one,

the cigarettes would probably all be sold. It was also believed that only juveniles were involved, and that no full-fledged criminal prosecution would result from this action.

Lt. Abraham and another officer knocked at the Montgomery's front door and Carol Montgomery, age 15 answered. When asked whether her pàrents were home, she said no, but that her sister Andrea was home. She then invited them inside where they met Andrea who was 17. Both girls were permanent residents of the house. The officers again inquired as to the mother's whereabouts but the girls were unsure where she was. The officers then explained to the girls that they believed their brothers had been involved in a burglary at Cast's and were selling cigarettes at the home. The officers also told the girls that they didn't have a search warrant and that the girls didn't have to allow the officers to search the house. Both of the girls gave their consent to the search saying that nothing was there and that they could search if they wanted to.

About this time, two Montgomery boys and defendant came down from upstairs. After getting their names, the officers explained to them why they were there. The boys denied stealing or selling cigarettes and told the officers to go ahead and search. The officers, with Andrea accompanying them, searched the house and found many packs of cigarettes hidden in the upstairs bedrooms.

While the search was continuing, Mrs. Montgomery called home. One of the officers spoke with her and told her that stolen packs of cigarettes had been found and also told her that they had searched without a warrant but that the

girls had given permission. She replied that that was alright.

Defendant and the Montgomery boys were arrested and then transported to the police station. They were given Miranda warnings while being transported and again at the station. At the house the boys had been asked their ages, and defendant had said he was 16. At the station, defendant gave his date of birth as 1-26-60 which would make him seventeen years old. At the station after being read their rights, the boys were talking with Lt. Abraham when defendant made an incriminating statement indicating he was involved in the burglary and sale of the stolen cigarettes. This statement was made within an hour of the arrest. While arrangements were being made to transport defendant and the other boys to the juvenile detention center, defendant's mother called the police station. Lt. Abraham explained what had happened and asked her to verify the date of birth given by her son. She did. Around 8 p.m. defendant was taken to the Lawrence County Juvenile Detention Center.

On April 11, the authorities learned that defendant was actually an adult. He was immediately taken to the police department and then to a magistrate at which time he was arraigned upon a criminal complaint. He is presently charged under an indictment with receiving stolen property.

Defendant primarily bases his claim for dismissal on the ground that the search of the Montgomery home was illegal. As stated in defendant's brief, the issue here is whether valid consent was given by the Montgomery girls. "In determining whether evidence obtained from a search consented to by one person can be used against

another, the question is whether the person granting the consent had sufficient control over the premises to grant the consent in his own right. The question is not whether the consenting person had the power to waive another's constitutional rights." Commonwealth v. Rhoads, 225 Pa. Superior Ct. 208, 212, 310 A.2d 406, 409 (1973). So if Andrea Montgomery had control over the home, and was able to give a valid consent, the search is legal.

The initial question which must be addressed is whether the fact that the person consenting is a minor precludes effective consent. No Pennsylvania case appears to clearly address this point. However, a few courts in other jurisdictions have considered this exact issue and have concluded that a minor may give a valid consent.

"We find nothing in the law to lead us to the conclusion that a seventeen year old boy, permanently living in his home, is incapable of giving valid consent to a police officer to search the premises . . . The age of the boy should, of course, be considered by the trier of fact to be one factor in determining whether or not consent was freely given." Gregoire v. Henderson, 302 F. Supp. 1402, 1407 (E. D. La. 1969). See also Blincoe v. People, 178 Col. 34, 494 P.2d 1285 (1972).

Our Superior Court has also indicated that the age of the person allegedly giving consent is only one of several items to be weighed before determining whether valid consent occurred. "Among the factors to be considered are the setting in which the consent was obtained; what was said and done by the parties present; *the age,* intelligence, and educational background of the person consenting." (Emphasis added.) Commonwealth

v. Burgos, 223 Pa. Superior Ct. 325, 330, 299 A.2d 34, 37 (1972).

Weighing these factors in this case, we can only conclude that valid consent was given to the search. The only testimony at the hearing supports the conclusion that the consent was freely given. If there is any evidence to show that the consent was actually or impliedly coerced, it should have been introduced at the hearing. On the evidence before us, we find a valid consent was given to the officers by Andrea Montgomery to search the Montgomery home.

Defendant's other argument goes to the admissibility of incriminating oral statements made by defendant within an hour of his arrest. He claims that the statements were the product of an unnecessary delay between arrest and arraignment in violation of Commonwealth v. Futch, 447 Pa. 389, 290 A.2d 417 (1972), and related cases. (Since the six-hour arraignment rule announced in Commonwealth v. Davenport, 471 Pa. 278, 370 A.2d 301 (1977), was stayed until May 15, 1977, the Futch rule applies in this case.)

The infirmity in this argument is readily apparent. Pennsylvania courts have repeatedly held that, in order to suppress evidence under the Futch rule, the evidence must be a product of the unnecessary delay: Commonwealth v. McFadden, 470 Pa. 604, 369 A.2d 1156 (1977). Here the incriminating statement was made less than an hour after the arrest and after only a few minutes of questioning. Defendant has not cited any case where such a short delay was held prejudicial. His oral statement was certainly not caused by this delay of a few minutes. It must also be kept in mind that the delay was a result of defendant's and

his mother's misstatement of his age. Under these circumstances we see no reason to suppress his incriminating statements.

## ORDER OF COURT

Now, August 22, 1977, in conformity with the opinion filed herewith, it is hereby ordered, adjudged and decreed that defendant's motion to suppress is hereby refused.