369 A.2d 783
**COMMONWEALTH of Pennsylvania,**
**Appellant,**
v.
**Milton G. HOWE.**

Superior Court of Pennsylvania.

Argued Sept. 16, 1976.
Decided Feb. 18, 1977.

8

Charles M. Guthrie, Jr., Assistant District Attorney, Reading, for appellant.

Charles A. Haddad, Reading, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

█ On May 13, 1976, the lower court issued an order against the Commonwealth suppressing a statement given by appellee to the police. The Commonwealth has appealed, as is its right. *Commonwealth v. Deren*, 233 Pa. Super. 373, 337 A.2d 600 (1975).

At 1:30 a.m. on February 26, 1976, Patrolman Byron C. Burns of the Spring Township Police Department re-

sponded to a call from a citizen by proceeding to the Weller's Tavern parking lot in Reading, Pennsylvania. There, he met the complainant, Durrell Chappell. After a discussion with Chappell, Burns began an investigation of the parking lot and eventually discovered the appellee sitting inside one of the parked automobiles. Appellee was busily attempting to install a tape deck into the dashboard of the car.

Patrolman Burns observed in plain view, several other consumer electronic devices inside the car. Some of these items were identified by Mr. Chappell as belonging to him. Burns read appellee his rights from a card and appellee indicated his understanding of them. Appellee was then placed under arrest. At this time, Burns noticed that appellee's breath smelled of alcohol. His speech was slurred and he had to be helped to the patrol car.

Appellee's car was impounded and towed to the stationhouse. There, Burns prepared an affidavit for a search warrant and a warrant was issued. Appellee was told that his car was going to be searched and he then, for the first time, volunteered to give a statement. Before the search was conducted, Donald W. Schlegel, chief of the Spring Township Police, took appellee's statement in which appellee confessed to the theft in the Weller's Tavern parking lot and also to other previous thefts, one of which is the subject of the present prosecution.[1]

The lower court suppressed the statement for the purposes of this prosecution, relying on three grounds. First, the court held that *Commonwealth v. Collins*, 436 Pa. 114, 259 A.2d 160 (1969), requires that a defendant be informed of the nature of the crimes which are being investigated. At the time that appellee gave the state-

1. The prosecution which is the subject of this appeal arises from thefts occurring in the parking lot of the Beef and Beer Restaurant in Reading. Thus, the Weller's Tavern theft, which led directly to the statement in question, is not involved in this appeal.

ment, he was not informed that the Beef and Beer theft was being investigated. The statement was taken in relation solely to the Weller's Tavern theft. Therefore, according to the lower court, the statement must be suppressed.

The lower court's second ground, though inartfully expressed, seems to be that the statement is "fruit of the poisonous tree." The search warrant issued for the impounded automobile was subsequently determined to be invalid. Since the items could not have been identified without a search, appellee would not have implicated himself in the present crime if he had not believed that the car would be validly searched. In fact, the statement was not signed by appellee until after the search had been made.

Finally, the lower court held that appellee's intoxication may have precluded a voluntary statement. According to the lower court's opinion, its decision was not based on any one of the above three grounds, but on the totality of the circumstances taking into account those three factors.

## I

In *Commonwealth v. Collins, supra*, the defendant was convicted of murder. On appeal, he contended that the trial court had erred in failing to suppress his oral statement because, prior to giving the statement, he had not been informed of the crime which was being investigated. A plurality of the Supreme Court justices agreed. The Commonwealth contends that *Collins* has been substantially weakened by *Commonwealth v. Richman*, 458 Pa. 167, 320 A.2d 351 (1974), and *Collins v. Brierly*, 492 F.2d 735 (3d Cir. 1974). In the latter case, the Third Circuit Court of Appeals specifically disagreed that a defendant must be informed of the nature of the charges in order to make a valid waiver of his rights.

*Commonwealth v. Richman, supra,* is the latest in a line of decisions in which the Supreme Court has interpreted its decision in *Collins.* Regrettably, the language in *Collins* could have been interpreted to place an affirmative duty on investigating officers to inform a subject of the nature of the charges against him. Subsequent cases have clearly eliminated the possibility of that interpretation.

In *Commonwealth v. Cooper,* 444 Pa. 122, 278 A.2d 895 (1971), the defendant gave a statement to the police admitting his role in the killing of a hotel proprietor. On appeal, he contended that the statement should have been suppressed, relying on *Collins.* The Supreme Court affirmed because "the defendant was aware of the crime for which he was being investigated—in fact he had telephoned the police and informed them that he had shot and killed the victim." 444 Pa. at 124–25, 278 A.2d at 897.

In *Commonwealth v. Jacobs,* 445 Pa. 364, 284 A.2d 717 (1971), the defendant confessed guilt to charges of first degree murder and aggravated robbery. He appealed the introduction into evidence of that confession on the ground that the police had failed to inform him of the crime with which he was charged. The Supreme Court affirmed the judgment of sentence, holding that "the facts show that appellant was fully aware of the charges against him, and why he was being questioned. He did not mistakenly think he was about to be questioned concerning another offense. In such circumstances, he cannot establish that his waiver of counsel and the privilege against self-incrimination was not intelligently made." 445 Pa. at 367, 284 A.2d at 719.

In *Commonwealth v. Richman, supra,* the Supreme Court interpreted its decision in *Collins* to mean only that, "the accused in order to make a valid waiver of the right to counsel should at least know the general nature of the transaction giving rise to the charges." 458 Pa.

at 175, 320 A.2d at 355. Therefore, it is no longer accurate to state that a defendant must be informed of the nature of the crimes leading to the investigation in order to make a valid waiver of his rights. Clearly, all that must appear is that the defendant was *aware* of the nature of the charges.

Obviously, the present case can be distinguished from *Collins* and its progeny. In those cases, the allegation was that the defendant was not informed of the nature of the charges leading to the investigation. A confession given totally without a point of reference was the evil to be prevented. *See Commonwealth v. Jacobs, supra.* In this case, while perfectly aware of the crime for which he was being investigated, appellee made statements about another. Appellee knew the general nature of the transaction which was being investigated, and, therefore, the purpose of the rule, as interpreted in *Richman*, has not been violated.

Furthermore, there are practical reasons for refusing to broaden the *Collins* rule to encompass the present situation. It would be impossible for the police to comply with the rule as interpreted by appellee. In this case, the police were not even aware of the other crimes. Therefore, they could not have informed appellee of the nature of them at the time that his statement was taken.

## II

The court's second ground is no more solid. It is true that appellee's statement was given with the prospect of a legal search in mind. However, at the time that the police told appellee of their intent to search, a legal search could have been made. The search was invalidated due to technical deficiencies in the warrant. To hold that appellee's prior statement is tainted because induced by the prospect of a legal search which was not legally executed is to lose all sight of the purposes behind the exclusionary rule.

In order to determine whether evidence must be excluded due to illegal police activities, it must be determined "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

█ What we must determine, then, is whether the evidence in this case was obtained by exploitation of the illegal search. The word "exploitation" is important, for it implies a causal connection between the illegality and the evidence in question. Indeed, one of the major exceptions to the exclusionary rule occurs when it can be said that the connection between the illegal police conduct and the challenged evidence has "become so attenuated as to dissipate the taint." *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939).

Therefore, we must analyze the connection in this case between the illegal search and appellee's prior statement. Appellee contends that the illegal search was one of the factors inducing him to make a statement. This characterization is not entirely accurate, however, for no search had been made when appellee confessed. Appellee was not confronted with illegally seized evidence, nor was he confronted with the fact that the police had searched his automobile. Thus, it was the prospect of a search, or appellee's anticipation of a legal search, which led him to confess.

█ At the time of appellee's confession, the police had done nothing illegal. It was not illegal to tell appellee that a search was to be made because the police could legally have executed such a search and the police intended legally to execute such a search. Only after appellee had given his statement did any police illegality occur.

Therefore, no illegality was exploited to obtain appellant's confession.[2]

## III

The lower court's final ground of decision was that appellee may have been under the influence of intoxicating liquor. Both Patrolman Burns and Chief Schlegel testified that appellee was lucid at the time he gave the statement. The detail and clarity of the answers in the statement seem to reflect sobriety. On the other hand, Burns testified that appellee's speech was slurred and his mobility impaired at the time of the arrest, and the statement was given only one and one-half hours later.

The lower court judge did not specifically find that appellee's intoxication rendered him incapable of knowingly and intelligently waiving his rights. He found instead that intoxication was one of the totality of circumstances leading him to conclude that the Commonwealth had not met its burden of proving that the statement was voluntary.

■■ Of course, we cannot substitute our view of the facts for that of the lower court, and, if the lower court had found upon sufficient evidence that the degree of intoxication was independently enough to make appellant's statement involuntary, we would affirm. However, the lower court did not do so. It regarded intoxication as one of three factors in its decision, and, as the preceding discussion demonstrates, two of those three

2. This does not imply that a search, subsequently determined to be illegal, could never bar the admission of a prior statement. For example, if the police, knowing that they could not employ a legal search, induced a statement with the threat of an illegal search, the evidence would probably be inadmissible.

In those circumstances, however, it can be said that the primary illegality is the false threat, not the search itself. Even if the search is regarded as the primary illegality, the deceptive conduct of the police would supply the nexus allowing us to say that the evidence was obtained by exploiting the illegality. In this case, there simply was no nexus between the evidence and the illegality.

16

factors were erroneous. Thus, whether the suppression order was proper depends on whether appellee's intoxication, alone, was sufficient to prevent appellee from voluntarily giving a statement. This is a question of fact to be decided by the suppression court. Therefore, this case must be remanded for such a determination.

The order of the lower court is vacated and the case is remanded for consideration in light of this opinion.