378 A.2d 953

**COMMONWEALTH of Pennsylvania**

v.

**Robert D. RAMBO, Appellant.**

Superior Court of Pennsylvania.

Submitted April 2, 1976.

Decided Oct. 6, 1977.

316

318

Arthur L. Gutkin, and Berkowitz & Gutkin, Philadelphia, for appellant.

Milton O. Moss, District Attorney, Norristown, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

On July 6, 1974, two packages were delivered to Apartment A–6, Building 8, English Village Apartments, North Wales, Pennsylvania. The packages contained items of pottery from Morocco, and also a total of 10 pounds, 6½ ounces of uncut hashish worth nearly $15,000. Appellant Robert D. Rambo, lessee of Apartment A–6, accepted the packages, signed for them, placed them on the floor in his apartment, then, unnoticed by the federal, state and local police who were observing the building, left the premises. Approximately forty-five minutes after delivery of the packages, the police, with a warrant to search the premises, entered the

unoccupied apartment and seized the unopened packages. In response to a note left for him by the police, appellant later reported to the police and was charged with possession with intent to deliver a controlled substance. Appellant was tried by a judge and jury, was found guilty, and was sentenced on June 27, 1975 to pay a fine of $1,000 and to serve a term of imprisonment of one to three years. Appeal was taken to our Court from the judgment of sentence.

Appellant argues that the Commonwealth failed to prove its case, and that the lower court erred in denying his demurrer and his motion for directed verdict. In *Commonwealth v. Sterling*, 241 Pa.Super. 411, 361 A.2d 799 (1976), our Court was faced with a somewhat similar fact situation, and found the evidence insufficient to establish that defendant was in *conscious* possession of a controlled substance. In *Sterling*, a package of hashish had been mailed from Holland to a Mrs. Donald Farr, in care of the defendant and his wife. Customs officials discovered the illegal contents of the package with the help of trained dogs, and a controlled delivery was made. Since neither defendant nor his wife was home, the package was left in the mailbox outside the house. When the defendant and his wife returned, the defendant retrieved the package from the mailbox, took it into the house, and placed it on the floor in the kitchen, where it was found by the police approximately forty-five minutes later. A jury found the defendant guilty of possession with intent to deliver hashish; on appeal, our court reversed for insufficient evidence. We find that *Sterling*, although somewhat similar to the case before us, is distinguishable in several important ways.

In the case before us, testimony of several police officers established that appellant had signed receipts for and had accepted delivery of two packages containing a total of nearly $15,000 worth of hashish. One of these packages was addressed to a third person in care of appellant (the situation in *Sterling*), one of the packages was addressed to appellant. A reasonable conclusion would be that appellant signed for and accepted delivery of a package

which was addressed to someone else (and which had no return address) because he was expecting it. Furthermore, it might reasonably be inferred from the fact that one package was addressed to appellant that both appellant and the sender contemplated appellant's opening that package. While guilt may never rest on mere conjecture, a conviction may stand on circumstantial evidence, and it is sufficient if the circumstances are consistent with criminal activity, even though they might likewise be consistent with innocent behavior. *Commonwealth v. Moore*, 226 Pa.Super. 32, 34, 311 A.2d 704 (1973). We find that the Commonwealth presented sufficient evidence to permit the jury to conclude that appellant was aware of the illegal contents of the packages, and that he possessed the packages with the intent to deliver them. The lower court properly overruled the demurrer.

■ After the lower court denied appellant's demurrer, appellant presented character witnesses and took the stand himself. Appellant denied knowledge of drugs in the packages, but did admit that he had received packages from his brother on prior occasions. These packages he purportedly held unopened until his brother or his brother's girl friend could come for them. It is the province of the fact-finder to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. *Commonwealth v. Murray*, 460 Pa. 605, 609, 334 A.2d 255 (1975). The jury in the case before us obviously did not believe appellant, possibly discrediting his testimony because of his initial refusal on cross-examination to answer a question concerning a trip he had made to North Africa. Accepting as true all direct and circumstantial evidence, and all reasonable inferences arising therefrom, upon which the jury could have based its verdict, *Commonwealth v. Williams*, 443 Pa. 85, 277 A.2d 781 (1971), we find the evidence sufficient to support the jury's conclusion that appellant knowingly possessed a large quantity of hashish and intended to deliver it.

Appellant argues that the Commonwealth failed to show that it was diligent in attempting to bring his case to trial,

and that the lower court erred in granting the Commonwealth's two petitions for extension of time for commencing trial and in denying appellant's motion to dismiss under Pennsylvania Rule of Criminal Procedure 1100. Complaint was filed against appellant on July 8, 1974. A preliminary hearing was held on August 21, and the transcript was filed by the District Justice with the Montgomery County Clerk of Courts on August 28. The indictment was returned by the grand jury on October 29, and six days later the case was certified to the Court Administrator by the District Attorney as being ready for trial. The Court Administrator listed the case to be tried on January 28, 1975. Realizing that as listed by the Court Administrator trial would commence twenty-four days beyond the expiration of the one hundred eighty day period mandated by Rule 1100(a)(2), the District Attorney in December, 1974, filed a petition for extension of time for commencing trial. A hearing on the petition was held on January 10, 1975, and the lower court (aware that trial was set for January 28) granted an extension to March 14. On January 20, appellant filed a petition to dismiss under Rule 1100. The parties appeared for trial on January 30, at which time appellant's petition to dismiss under Rule 1100 was denied. A Commonwealth witness, a chemist who was to testify that the two packages contained hashish, became ill, and was unavailable for trial. Although appellant was unwilling to stipulate to the contents of the packages for purposes of the trial, both appellant and the District Attorney were willing to argue the suppression motion without the chemist. The lower court, however, continued the case in order to have the suppression motion heard by the same judge who would try the case. The Court Administrator placed the case on the trial list for April 15, which was beyond the date set by the lower court in its order of January 10. Once again the Commonwealth filed a petition for extension of time, which was granted on March 21, after a hearing. The case finally came to trial on May 1, 1975, 297 days after the complaint was filed.

■■ Under Rule 1100, the prosecution must petition the lower court for an extension of time if, despite exercising "due diligence," it cannot bring the case to trial within the prescribed period. Appellant relies on our court's decisions in *Commonwealth v. Shelton*, 239 Pa.Super. 195, 361 A.2d 873 (1976), and *Commonwealth v. Mayfield*, 239 Pa.Super. 279, 362 A.2d 994 (1976) as support for his position that the Commonwealth failed to demonstrate due diligence in bringing his case to trial. Subsequent to filing of appellant's brief, our Supreme Court granted allocatur in *Shelton* and *Mayfield*, and supplanted our rulings with their own. *Commonwealth v. Shelton*, 469 Pa. 8, 364 A.2d 694 (1976); *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976). After October 8, 1976, the date of the Supreme Court's decision in *Mayfield*, a trial court would be able to grant an extension only upon a *record showing* of "due diligence" on the part of the District Attorney in attempting to bring the case to trial within the prescribed period, and only upon a certification that trial was scheduled for the earliest date "consistent with the court's business." Delay due to the *court's* inability to try the defendant within the prescribed period would require that the record indicate the cause of the court's delay and the reason the delay could not be avoided. 469 Pa. at 222, 364 A.2d 1345. Since in the case before us the extensions of time were granted by the lower court prior to the Supreme Court's decision in *Mayfield*, the specific standards required of the prosecution as to what the record must show to establish due diligence are not applicable. Nevertheless, our review of the notes of testimony of the hearings of January 10, January 30, and May 1, 1975, reveals a showing of due diligence on the part of the prosecution in bringing appellant's case to trial.

In the case before us, the District Attorney, within six days of the return of the indictment, notified the Court Administrator that the case was ready for trial. The Court Administrator, pursuant to normal procedure, listed the case for the earliest available trial date. When the District Attorney realized that the case would not be tried within

180 days of the filing of the complaint, he petitioned for and received an extension of time. When trial was unable to commence on the date set and the Court Administrator listed the case for trial beyond the period specified by the lower court when it granted the extension, the District Attorney once again filed a petition for and was granted an extension of time. We find that the prosecution, in timely filing its petitions for extension of time and convincing the lower court of the necessity for such extensions, complied with the requirements of Rule 1100 as they existed prior to the Supreme Court's decision in *Mayfield.* Appellant was brought to trial prior to the expiration of the mandatory period, as properly extended, and the lower court properly denied appellant's petition to dismiss.

██ Appellant argues that the warrant which was issued for the search of his apartment was not based on sufficient information, and that the lower court therefore erred in denying his motion to suppress the evidence found at his apartment (the packages of hashish and the lease establishing appellant's residence). If a common sense reading of the affidavit supporting a search warrant indicates that sufficient information was provided the issuing magistrate to show the probability of illegal activity or contraband at the place to be searched, our court will not find the warrant invalid. See *Commonwealth v. Williams,* 236 Pa. Super. 184, 345 A.2d 267 (1975). The relevant part of the affidavit in support of the warrant for the search of appellant's apartment reads as follows:

"On 7–5–74 your affiant received information from Postal Inspector John Ruberti, who in the past has provided the Bureau of Drug Control and your affiant with information resulting in five narcotic arrests with court action pending. Inspector Ruberti did state to me that the above five packages were intercepted in New York by the United States Bureau of Customs and, as a result of a routine inspection, both packages were found to contain a total of approximately 13 pounds of hashish which was field tested by Customs and resulted in a positive reaction. These

packages are addressed respectively to Mr. Robert D. Rambo and Mrs. P. Krammer at the English Village Apts., building # 8, apartment A–6. The package to Mrs. P. Krammer bears the same address but no apartment number, but with a return address of: 'Mrs. R. D. Ramo, blodg[sic] # 8, apartment A–6, North Wales, Pa. U.S.A.['] As a result of investigation conducted by your affiant I have learned that a Robert D. Rambo does occupy apartment A–6 in building # 8 at English Village Apartments, and further there is no Mrs. P. Krammer registered as living in building # 8. I do believe the above information to be true and pray that you grant your affiant this warrant to be served in daylight hours . . . , approximately 11:30 AM on Saturday July 6th, 1974. The above packages, I believe, will be delivered by United States Postal Service on this date between 11:00 AM and 12:00 Noon to the above address."

We find that this affidavit contained sufficient information to show the probability that police officers would find appellant in possession of hashish on July 6, 1974, at building # 8, apartment A–6, English Village Apartments. The lower court was correct in finding probable cause for the issuance of the search warrant and in denying appellant's application to suppress.

Appellant argues that the lower court erred in refusing to read to the jury the following requested point for charge: "You are further instructed that you may not convict defendant of a willful and knowing possession of a controlled substance with the intent to deliver same based only on the quantity of the drugs that you find he possessed, if you so find that he knew that drugs were in the packages delivered." Appellant's argument is essentially directed at the lower court's directions to the jury with respect to their drawing an inference of intent to deliver from the quantity of hashish involved. After instructing the jury that it could not find defendant guilty of possession with intent to deliver illegal drugs unless it found that appellant knowingly possessed the drugs and actually intended "to deliver them, to

put them into commerce, to pass them on to somebody else, either in bulk or in packages," the court went on to call the jury's attention to the quantity and value of the hashish: "Now you will have to ask yourselves is that fact alone [the quantity and value] enough to cause us to be satisfied beyond a reasonable doubt that that was the basis for possessing it [for delivery], or did he simply possess ten pounds of hashish for his own use." In Pennsylvania, the quantity and the value of illegal drugs are facts which may be considered by the fact-finder in determining whether the illegal matter was intended for distribution or merely for personal use. See *Commonwealth v. Santiago*, 462 Pa. 216, 340 A.2d 440 (1975) and *Commonwealth v. Brown*, 232 Pa. Super. 463, 335 A.2d 782 (1975). The lower court correctly stated the law. As for appellant's related allegation that the relevant statute was unconstitutionally vague for failing to specify the amount necessary to support an inference of intent to deliver, we find that this is an evidentiary matter—the intent to deliver must be inferred from the facts and circumstances, and one fact to be considered is the quantity of drugs possessed; mention of quantity in the statute is entirely unnecessary. See *Santiago*, 462 Pa. at 223–25, 340 A.2d 440.

Appellant's final argument is that the lower court erred in refusing his motion for a new trial based on after-discovered evidence. It is clear that to qualify as "after-discovered evidence," such as will justify the grant of a new trial, evidence must be discovered after the trial, must be of such a nature that it could not with reasonable diligence have been obtained in time for the trial, must not be cumulative or merely impeach credibility, and must be likely to compel a different result. *Commonwealth v. Schuck*, 401 Pa. 222, 229, 164 A.2d 13 (1960), *cert. den.*, 368 U.S. 884, 82 S.Ct. 138, 7 L.Ed.2d 188 (1961); *Commonwealth v. Johnson*, 228 Pa.Super. 364, 366, 323 A.2d 295 (1974). In the case before us, the evidence in question is the proposed testimony of appellant's brother regarding appellant's alleged lack of knowledge of the contents of the two packages.

Such evidence cannot be considered "after-discovered," since the nature of the evidence was known to appellant before trial.

■ Appellant argues that his brother was, at the time of trial, unwilling to testify, and also that the brother was out of the country and therefore unavailable to the defense. Appellant testified at trial that his brother had called him approximately one week after appellant's arrest, but that appellant had refused the call. Appellant also testified that he had spoken with his brother on the phone two or three weeks later, and also *in person* on an unspecified date. There is no indication that appellant ever even asked his brother to testify; furthermore, had appellant through legal process been able to secure his brother's presence at the trial, due to the fact that the brother would have been subject to possible criminal prosecution himself, it is unlikely that appellant would have been able to compel his brother to take the stand. The rule on after-discovered evidence does not apply to evidence which is *difficult* to obtain, but only to evidence which is actually not discovered until after trial. Appellant evidently decided to take his chances in court without his brother's testimony; he will not now be granted a new trial and the opportunity to produce a witness who, if not readily available, at least was known to appellant before trial. The lower court properly ruled that the proposed testimony of appellant's brother was not "after-discovered" evidence, and the court properly denied the supplemental motion for new trial.

Judgment of sentence affirmed.

CERCONE, J., concurs in the result.

HOFFMAN, J., files a dissenting opinion in which JACOBS and SPAETH, JJ., join.

HOFFMAN, Judge, dissenting:

Appellant contends that the lower court erred in denying his demurrer and motion in arrest of judgment. I agree, and therefore, dissent.

At trial the Commonwealth presented the following facts. A United States Postal Inspector, John Ruberti, initiated an investigation concerning two packages which were in transit in the United States mail. One of the packages was addressed to Robert Rambo at English Village Apartments, Building Number 8, Apartment A–6, North Wales, Pa. 19454; the other was addressed to Mrs. P. Krammer, English Village Apartments, Building Number 8, Apartment RD, North Wales, Pa. The return address on the second package was to a Mrs. R. D. Ramo at appellant's address. Both bore stamps from Tangiers, Morocco. Mr. Ruberti, in conjunction with the Pennsylvania Bureau of Narcotics, the Horsham Township police, and the Postmaster of North Wales, arranged for a controlled delivery[1] of the two packages to appellant's apartment. On July 6, 1974, agent Hirsch of the Narcotics Bureau obtained a search warrant for appellant's apartment. At approximately 11:30 a.m. on that date, while police officers observed the building, a letter carrier for the North Wales post office delivered both packages to appellant. Appellant accepted the packages and signed a receipt for each one. At 12:45 p.m., agent Hirsch knocked on appellant's door and announced himself. He then entered the unoccupied apartment and discovered the two packages unopened on the floor in the living room. The officers opened the packages and found stuffing, pottery, and a quantity of what was later found to be hashish. The police left a note for appellant informing him of the search and asking him to contact the Horsham Township police department.

On July 8, 1974, appellant reported to the Horsham police station where he was arrested for possession with the intent to deliver a controlled substance.[2] On May 5, 1975, a jury

1. A controlled delivery is one which the police and United States post office officials agree to carry out in a predetermined way. Normally, a trusted mail carrier is selected to perform the actual delivery and the police observe his actions.

2. The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, § 13, imd. effective, as amended October 26, 1972; 35 P.S. § 780–113(a)(30).

found appellant guilty. The court sentenced appellant to undergo a term of imprisonment of one to three years and to pay a fine of $1,000. This appeal followed.

Appellant argues that the evidence is insufficient to show that he had conscious dominion or control over the hashish. In assessing appellant's challenge to the sufficiency of the evidence, we must view the evidence in the light most favorable to the Commonwealth, as verdict winner. *Commonwealth v. Herman*, 227 Pa.Super. 326, 323 A.2d 228 (1974); *Commonwealth v. Moore*, 226 Pa.Super. 32, 311 A.2d 704 (1973). Nonetheless, it is axiomatic that in a criminal case, the guilt of the accused must be proved beyond a reasonable doubt; *Commonwealth v. Wrona*, 442 Pa. 201, 275 A.2d 78 (1971), and a conviction cannot be based upon mere conjecture or surmise. *Commonwealth v. Bailey*, 448 Pa. 224, 292 A.2d 345 (1972); *Commonwealth v. Leonhard*, 245 Pa.Super. 116, 369 A.2d 320 (1976). However, "[w]hen possession of contraband is charged, the evidence must show not only that an accused had conscious dominion over the object; that is, the accused must have not only the power to exercise control, but also have an intent to exercise that power of control." *Commonwealth v. Sterling*, 241 Pa.Super. 411, 415, 361 A.2d 799, 801 (1976); *Commonwealth v. Fortune*, 456 Pa. 365, 318 A.2d 327 (1974); *Commonwealth v. Davis*, 444 Pa. 11, 280 A.2d 119 (1971); *Commonwealth v. Tirpak*, 441 Pa. 534, 272 A.2d 476 (1971).

*Commonwealth v. Sterling*, supra, presented a factual situation almost identical to the case at bar. In *Sterling*, the police arranged a controlled delivery of a package of hashish addressed to a Mrs. Donald Farr, in care of the appellant and his wife. The postman placed the package in appellant's mailbox. Appellant and his wife returned home about three hours later, retrieved the package and other mail and entered their home. The police executed the search warrant about 45 minutes later and found the unopened package on the floor of the kitchen. A jury found appellant guilty of possession with the intent to deliver the hashish. Our Court concluded that the evidence was insufficient to prove con-

scious exercise of control over the hashish and we ordered appellant discharged.

I believe that *Sterling* squarely controls the instant case. The Commonwealth's evidence did not establish that appellant had discovered the contents of the package or that he intended to exercise control over the hashish. He did not open the package to discover the concealed contraband; he merely placed the unopened packages on the floor and left the apartment. In short, appellant performed no act which demonstrated an intent to exercise conscious dominion and control over the contents of the package.

The Majority attempts to distinguish *Sterling* because one of the packages in the instant case was addressed to appellant and because appellant signed receipts for the packages. (At 956). They reason that appellant might be expecting the package and, that because one package was addressed to appellant, both appellant and the sender contemplated that appellant would open the package. The fact that appellant may have expected a package is pure conjecture. Moreover, even if he did expect a package that does not lead to the inference that he expected it to contain hashish. Appellant could have expected it to contain any number of items, none necessarily hashish or contraband. Further, to assume that appellant would open the package assumes too much and is sheer conjecture. The fact is that appellant did not open the package and thus never performed the act which might have indicated the intent to exercise control over the hashish. I strongly believe that the verdict in the instant case is based upon mere conjecture and surmise. The Commonwealth failed to prove that appellant possessed the requisite intent to sustain a conviction under § 780–113(a)(30) of the Controlled Substance Act, supra.[3] Therefore, I would vacate the judgment of sentence and order appellant discharged.

JACOBS and SPAETH, JJ., join in this dissenting opinion.

**3.** The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973; 18 Pa.C.S. § 301, defines the act of possession as follows:

"(c) Possession is an act, within the meaning of this section, if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession."

This definition is made applicable to the Controlled Substance, Drug, Device and Cosmetic Act, supra, by The Crimes Code, supra; 18 Pa.C.S. § 107(a) which provides:

"(a) The provisions of Part I of this title (relating to preliminary provisions) are applicable to offenses defined by this title or by any other statute."

Because the Commonwealth has failed to prove possession, an element of the offense for which appellant was convicted, he must be discharged.