401 A.2d 841

**COMMONWEALTH of Pennsylvania**

v.

**Joseph HERRIOTT, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Frank MACHI, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 26, 1978.

Decided April 12, 1979.

Petition for Allowance of Appeal Denied Sept. 17, 1979.

144

146

Stanton D. Levenson, Pittsburgh, for appellant Joseph Herriott.

Richard C. DeRenzo and Dennis J. Clark, Pittsburgh, for appellant Frank Machi.

Robert L. Eberhardt and Charles W. Johns, Assistant District Attorneys, Pittsburgh, for Commonwealth, appellee.

Before CERCONE, WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

This is a direct appeal from the judgments of sentence imposed following Joseph Herriott's conviction nonjury on three counts of promoting prostitution and one count of corruption of minors and Frank Machi's conviction on three counts of promoting prostitution and one count of simple assault. Appellants contend (1) that the evidence was insufficient to support the several verdicts of guilty; (2) that the trial judge erred in denying motions to suppress evidence; and (3) that the trial judge erred in refusing their motions for new trial based on after-discovered evidence. Appellant Machi asserts additionally that the Court of Common Pleas of Allegheny County lacked subject matter jurisdiction to try him on two counts of promoting prostitution. We find no merit in these contentions and affirm.

■ "In appraising the sufficiency of evidence, we must apply a two-step test. First we must regard the evidence in the light most favorable to the Commonwealth, accepting as true all evidence upon which the fact finder could properly have based its verdict; then we must ask whether that evidence, with all reasonable inferences from it, was sufficient to prove guilt beyond a reasonable doubt." *Common-*

*wealth v. Eddington,* 255 Pa.Super. 25, 386 A.2d 117 (1978). Applying this test to the instant case, the evidence was clearly adequate to support the trial court's findings of guilt on all charges.

During May, 1976, the prosecution witness, Barbara Star, age fifteen, was a runaway from a juvenile detention center. In need of a place to stay, she contacted Machi, with whom she had been acquainted for less than a year. On May 21, 1976, she held a conversation with Machi in Pittsburgh, during which she told him that she had run away from the detention center. Machi suggested that she become a prostitute. He assured her that she would have a place to stay and would not have to work the streets. He also made clear that he, Machi, would handle the money. The discussion of prostitution was continued later that same day, this time in the presence of Herriott, at an apartment on Stanton Street in Pittsburgh. Machi and Herriott told Barbara that a woman, whom she would find at the place where she was to commence her career as a prostitute, would "explain things better."

That evening, appellants drove Barbara to an apartment in New Kensington, Westmoreland County, and left her in the company of an unidentified woman. After some conversation with this woman, Barbara began to perform various sexual acts with and upon men. Each of approximately 6 or 7 customers paid her sums varying between twenty and fifty dollars. These sums she gave to the woman in the apartment. With the exception of May 23, Barbara worked at her new profession daily until May 29, 1976. Her hours of work were from 8:00 o'clock, P.M. to 4:00 o'clock, A.M. During the day, appellants took the witness to dinner and kept her supplied with valium. All moneys received by Barbara were given to the unidentified woman who, in turn, delivered a portion thereof to Machi.

On May 30, Machi drove the witness to an apartment in Bloomfield, Allegheny County, gave her the key and left her there alone. The following day, an argument caused Machi to demand a return of the apartment key. Barbara refused

his demand. In an effort to take the key from her, Machi pushed Barbara to the floor, punched her and tore her pants. He also took twenty dollars from her, allegedly to pay for the two banister posts broken by her fall.

Ms. Star then sought refuge with Herriott, who arranged to have her perform acts of prostitution at an apartment occupied by Diane Tessena. Barbara "worked" three nights at this apartment, performing a total of seven acts of prostitution. All money received was given to Ms. Tessena, who delivered one-half thereof to Herriott. On the third night, Barbara and Ms. Tessena had an argument, and the juvenile was evicted.

In the summer of 1976, Barbara had been placed on probation and was in the custody of her parents. In September, her probation officer learned that Barbara was planning to run away to Florida and that her clothes were at the bus station in Pittsburgh. When confronted with her probation officer's knowledge of her plans, Barbara fled her parents' home to Herriott's nearby apartment. She told Herriott that her probation officer was looking for her and that she feared being sent to another juvenile detention center. Stating that she was "too hot" to remain with him, Herriott offered to give her a ride into downtown Pittsburgh.

Meanwhile, the probation officer had contacted the police, who thereafter discovered Barbara in Herriott's car. They placed Herriott under arrest for corrupting a minor by assisting a juvenile runaway. Barbara, on her own volition, then told her probation officer of her activities with Machi and Herriott. As a result, criminal charges were brought against Herriott, Machi and Diane Tessena.[1]

The Commonwealth charged that appellants' conduct violated three separate provisions of 18 Pa.C.S.A. § 5902(b) as follows:

1. Ms. Tessena was also convicted of multiple offenses and filed a separate appeal. The judgment of sentence was affirmed on February 15, 1979.

150

"(b) Promoting prostitution.—A person who knowingly promotes prostitution of another commits a misdemeanor or felony . . . . The following acts shall, without limitation of the foregoing, constitute promoting prostitution:

(2) procuring an inmate for a house of prostitution or a place in a house of prostitution for one who would be an inmate;

(3) encouraging, inducing, or otherwise intentionally causing another to become or remain a prostitute;

(6) transporting a person into or within this Commonwealth with intent to promote the engaging in prostitution by that person, or procuring or paying for transportation with that intent."

Contrary to appellants' argument, subsection (b)(2) was not designed to prohibit the enticing of persons only into fully staffed brothels. Rather, it includes within the parameters of its proscription the procuring of an inmate for "any place where prostitution or promotion of prostitution is regularly carried on by one person under the control, management or supervision of another." 18 Pa.C.S.A. § 5902(f). The evidence in the instant case revealed that Barbara had worked consistently between the hours of 8:00 o'clock, P.M. and 4:00 o'clock, A.M. in the New Kensington apartment. Later, she also worked in Ms. Tessena's apartment for three successive days between the hours of 8:00 o'clock, P.M. and 1:00 o'clock, A.M. In both apartments, Barbara was under the direct control and management of other persons who explained the terms, dictated the procedure and determined the fee to be charged and collected. Nightly customers were solicited by someone other than Barbara, and all moneys were controlled by the women who supervised her activities. It is clear, therefore, that prostitution at these apartments was an organized operation and not merely a casual occurrence.

It is also to be observed that the acts of appellants which encouraged and induced Barbara to engage in acts of prostitution and which transported her within the Commonwealth for that purpose were precisely the conduct proscribed by subsections (b)(3) and (b)(6).

■ Appellant Machi also contends that the evidence was insufficient to sustain a verdict of simple assault because the Commonwealth's evidence failed to show that Barbara had sustained bodily injury or substantial pain. Section 2701(a) of the Crimes Code, 18 Pa.C.S.A. § 2701(a) defines assault as follows:

"A person is guilty of assault if he: (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another; (2) negligently causes bodily injury to another with a deadly weapon; or (3) attempts by physical menace to put another in fear of imminent serious bodily injury."

The term "bodily injury" is defined by Section 2301, 18 Pa.C.S.A. § 2301, as "Impairment of physical condition or substantial pain."

The wording of the statute expressly provides that the crime of assault includes an attempt to inflict bodily injury. Therefore, it is not essential to prove that the victim of an assault sustained actual injury. *Commonwealth v. Barnett*, 253 Pa.Super. 39, 384 A.2d 965 (1978); *Commonwealth v. Stancil*, 233 Pa.Super. 15, 334 A.2d 675 (1975). It has been held to constitute an assault where the victim was punched and knocked down [*Commonwealth v. Johnson*, 236 Pa.Super. 98, 344 A.2d 646 (1975)]; where a police officer was struck with a suitcase [*Commonwealth v. Whitner*, 241 Pa. Super. 316, 361 A.2d 414 (1976)]; and where the victim was scratched and hit twice with a stick [*Commonwealth v. Franklin*, 248 Pa.Super. 145, 374 A.2d 1360 (1977)].

■ In the instant case, Barbara was pushed to the ground by Machi with such force that she knocked several posts from a nearby banister. He then tore off her pants, causing a bruise on her leg. While she was on the ground,

Machi punched Barbara's body sporadically for several minutes. This constituted an assault.

Appellant Herriott argues further that there was insufficient evidence to convict him of corrupting a minor because the Commonwealth failed to show that he knew Barbara was on probation and a runaway at the time of his arrest. This argument is not supported by the record. The testimony discloses that Barbara had told Herriott that she had run away from her probation officer and needed help. It was with knowledge of this fact that Herriott agreed to take Barbara to the bus station.

Appellant Machi next argues that if he committed any crime at all, the offense occurred in Westmoreland County and not in Allegheny County. This jurisdictional argument is also without merit. Where, as here, an offense is continuing, or where elements of the same offense occur in several counties, the offender may be tried in any county where an overt act occurred. *Commonwealth v. Creamer*, 236 Pa.Super. 168, 345 A.2d 212 (1975); *Commonwealth v. Marino*, 213 Pa.Super. 88, 245 A.2d 868 (1968), aff'd, 435 Pa. 245, 255 A.2d 911 (1969), *cert. denied*, 397 U.S. 1077, 90 S.Ct. 1526, 25 L.Ed.2d 811; *Commonwealth v. Petrosky*, 194 Pa. Super. 94, 166 A.2d 682 (1960); *Commonwealth v. Prep*, 186 Pa.Super. 442, 142 A.2d 460 (1958); *Commonwealth v. Lowry*, 153 Pa.Super. 639, 34 A.2d 814 (1944); *Commonwealth v. Sexton*, 107 Pa.Super. 69, 162 A. 678 (1932). The act or acts sufficient to support jurisdiction must be essential to the crime and not merely incidental or speculative. *Commonwealth v. Bertels*, 260 Pa.Super. 496, 502, 394 A.2d 1036, 1039 (1978).

In the instant case, it is clear that Machi "encouraged" and "induced" the juvenile to become a prostitute in Pittsburgh, Allegheny County. It can also be inferred that she consented to become a prostitute in Allegheny County for she voluntarily accompanied Machi to Westmoreland County for the express purpose of engaging in prostitution. Thus, her "procurement" could have been found by the

factfinder to be complete before she left the territorial limits of Allegheny County. However, even if a final commitment had not been made by Barbara prior to her arrival in New Kensington, Westmoreland County, the course of conduct which resulted in her "procurement" commenced in Allegheny County and continued as Barbara was transported into Westmoreland County. Prosecution in Allegheny County, therefore, was proper. It was not necessary to the jurisdiction of the Courts of Allegheny County that Barbara's commitment to become a prostitute had been final and complete before she left the county.

Appellants next contend that the court below improperly denied their motions for new trial.

In support of their motions for new trial, appellants had argued that Herriott's arrest was unlawful and that Barbara's statements had been the fruit of that unlawful arrest. They contended, therefore, that the trial court should suppress Barbara's testimony. The trial court denied their motion, and they assign this ruling as error. This argument derives no support from the facts. Barbara had notified her probation officer that she intended to elope to Florida and that her clothes had already been taken to the bus station. Thereupon, her probation officer notified the police, and both probation officer and police went in search for Barbara. When they found her in Herriott's car, they took her into custody. There was nothing improper in this. Her statement implicating Herriott and Machi in criminal activity followed this event. It was not in any way dependent upon the arrest of Herriott for corrupting a child. Thus, without deciding the validity of Herriott's arrest, it is clear that Herriott has failed to show a nexus between his arrest and the statement which Barbara gave after *she* had been taken into custody. See: *Commonwealth v. Howe*, 246 Pa.Super. 7, 14, 369 A.2d 783, 786 (1977). To apply an exclusionary rule to bar Barbara's testimony under these circumstances would serve no prophylactic purpose and would permanently silence the juvenile victim of appellants' crimes. The trial court properly denied appellants' motions to suppress Barbara's testimony.

## 154

■ Appellants complain finally that the trial court denied without hearing their motions for new trial on the grounds of after-discovered evidence. An affidavit filed by appellants disclosed that the additional evidence was testimony from a witness who was known but could not be found at the time of trial. The witness would have testified, it is averred, that on a prior occasion Barbara requested Machi to help her become a prostitute and he had refused.

It is well established that four conditions must be met before a new trial will be granted on the basis of after-discovered evidence: "First, the evidence must have been discovered after the trial. Second, it must be apparent that the testimony could not have been available at trial through the exercise of reasonable diligence. Third, the evidence must not be cumulative or primarily directed at impeaching credibility. Fourth, the testimony must be such as would likely compel a different result." *Commonwealth v. Miller*, 465 Pa. 458, 462, 350 A.2d 855, 857 (1976).

■ The additional evidence relied upon by appellants in the instant case was inadequate to require the grant of a new trial for several reasons. In the first place, neither Barbara's earlier predisposition to become a prostitute nor Machi's earlier reluctance to promote such prostitution would constitute a defense to the instant charges. Secondly, the testimony had been known to appellants prior to trial. The fact that it was difficult to obtain for trial does not satisfy the requirement that evidence be "discovered" for the first time after trial. *Commonwealth v. Rambo*, 250 Pa.Super. 314, 326, 378 A.2d 953, 959 (1977). Despite the difficulty experienced by appellants in locating the witness, they did not inform the trial court prior to concluding their case or request a continuance to compel the witness' attendance.

The judgments of sentence are affirmed.

HOFFMAN, J., files a concurring statement.

Concurring Statement by HOFFMAN, Judge:

I join in the Court's analysis and resolution of the issues. I wish only to emphasize that Herriott's arrest in no way precipitated Barbara Star's statement. Police were searching for Star because she was a runaway; they obtained her statement as a result of their finding her, not arresting Herriott. In fact, Herriott's arrest was the result of Star's statement, not the other way around. Thus, unlike the situation in *Commonwealth v. Cephas*, 447 Pa. 500, 291 A.2d 106 (1972), Star's statement was not obtained by exploiting an alleged illegality about which Herriott had a right to complain. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 967, 22 L.Ed.2d 176 (1969). *See Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Accordingly, we need not discuss whether use of the exclusionary rule would be appropriate in this case. *See United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).