## Commonwealth v. Sabol

*James E. Gavin, assistant district attorney,* for the Commonwealth.

*Emmanuel H. Dimitriou,* for defendant.

STALLONE, *J.,* December 19, 1990 — On March 7, 1990, defendant, Joseph Michael Sabol, was arrested and charged with one count of promoting prostitution[1] in each of criminal action nos. 1107-90 and 1108-90. On March 21, 1990, he was arrested and charged with two additional counts of promoting prostitution[2] and two counts of indecent assault[3] in criminal action no. 1109-90. Subsequent

---

1. 18 Pa.C.S. §5902(b)(3).
2. 18 Pa.C.S. §5902(b)(3), (b)(8).
3. 18 Pa.C.S. §3126.

to his arraignment, a preliminary hearing was held before District Justice Leonard Harvey, after which the district justice dismissed the two counts of indecent assault in criminal action no. 1109-90, but bound over to the court of common pleas the charges of promoting prostitution.

As will be explained more fully herein, the district justice should have dismissed the promoting prostitution charges as well and not just the two counts of indecent assault.

Because the district justice did not, defendant filed with this court a petition for a writ of habeas corpus. The purpose of such a document is to seek dismissal of the criminal charges bound over for court on the basis that the Commonwealth failed to introduce evidence which would permit a jury at trial, if one were held, to find the defendant guilty.

On September 20 and 21, 1990, this court held a hearing to allow the Commonwealth to supplement the testimony submitted at the preliminary hearing before the district justice. During the later hearing, the Commonwealth elicited testimony from the three women from whom defendant allegedly sought sexual favors in return for his promise to give them money and/or free modeling portfolios prepared by him.

The evidence as developed at the preliminary hearing and as supplemented at the omnibus pretrial hearing before this court is as follows:

On May 17, 1988, Ms. Joanne Jackowski went to defendant's studio to have some photographs taken for a contest she was entering, sponsored by a magazine entitled *Big Beautiful Women*. That day, Ms. Jackowski signed three separate written contracts with defendant. The first contract called for defendant to take some "head shots" of Ms. Jackowski for submission to the magazine. The second

14

contract was a "Model Release Agreement," while the third contract was an "Agency Agreement." After the photographs were taken at defendant's studio, he informed Ms. Jackowski that the price for them would be $200.

Subsequently, Ms. Jackowski sat down on the couch with defendant, who proceeded to place his hand onto her leg. Ms. Jackowski told him to "stop" and then pushed his hand away. Defendant then offered to "cancel" the bill for the photographs if she would perform oral sex with him, which she refused. Ms. Jackowski subsequently received the photographs taken by defendant, but failed to pay for them after defendant sent her a bill for them in July or August 1988.

Approximately one and one-half years later, on January 31, 1990, Mrs. Melissa Sewell met with defendant at his studio, located in his house at 1027 Elm Street, Reading, Berks County, Pennsylvania, at approximately noon, for the purpose of discussing a possible modeling and photography contract with defendant. Upon her arrival, defendant began discussing modeling with Mrs. Sewell. As part of their conversation, defendant told Mrs. Sewell that portfolios cost a lot of money, but that, if she would become associated with the "right" photographer, it would not cost her anything. Defendant then asked Mrs. Sewell to put on a black "see-through" nightie in order to take her measurements, which she did. Defendant then began rubbing oil on her, to which Mrs. Sewell did not object, telling her that wanted to see how oil reacted with her body. Defendant rubbed oil onto her arm and then worked down to her chest and onto her breasts, after which she told him to stop, which he did. She then got dressed.

Afterward, they again began to discuss modeling and defendant further told her that a model sometimes has to put her career and family aside in order to pursue modeling and that she would have to perform sexual acts to find work. Defendant then offered Mrs. Sewell $50 if she would perform oral sex upon him, to which she replied "No." Defendant then offered her $100 to perform the same act and subsequently increased the offer to several thousand dollars. Each time, Mrs. Sewell responded "No." Mrs. Sewell stayed at defendant's studio for approximately two hours, but never heard from defendant at any time after that relative to modeling work.

Finally, on March 6, 1990, at approximately 8 p.m., Officer Michelle Shappell of the Reading Bureau of Police, pursuant to an undercover investigation, met with defendant at the Queen City Restaurant, located at 100 Lancaster Avenue, Reading, Berks County, Pennsylvania. While at the restaurant, they discussed modeling as a career and the earnings potential associated with it. During the course of the interview, defendant told Officer Shappell that agents often asked their models to perform sexual acts in exchange for portfolios and asked her if she could handle "sleeping with" him.

At approximately 10 p.m., defendant and Officer Shappell left the restaurant in separate cars, on defendant's representation that there was another part of the interview which he could not conduct in the restaurant. Officer Shappell followed him in her own vehicle until they reached the 400 block of Grace Street, Reading, Berks County, Pennsylvania. Upon their arrival, defendant motioned for Officer Shappell to park her vehicle and to step inside his vehicle, which she did. Defendant then

offered to give her a free portfolio in exchange for performing oral sex upon him.

The aforementioned testimony constitutes all of the evidence introduced at the preliminary hearing before the district justice and the omnibus pretrial hearing before this court.

After the testimony was presented, the court, determining that the Commonwealth had no case law directly on point, directed the Commonwealth's attorney to further research the matter and, within 60 days, file with the court a legal brief in support of the Commonwealth's position that the alleged acts of defendant, if believed by a jury, would constitute the crime of promoting prostitution.

Because of the district attorney's subsequent failure to find any case law, either within or outside of Pennsylvania, further defining the term "prostitution" as set forth in section 5902 of the 1972 Criminal Code, the court was compelled to rely strictly upon the language in the statute and the "Official Comments" written by the Pennsylvania State Legislature when it enacted the criminal prostitution statute pursuant to which defendant is charged.

First, the statute reads as follows:

"§5902. *Prostitution and related offenses*

"(a) *Prostitution* — A person is guilty of prostitution . . . if he or she:

"(1) is an inmate of a house of prostitution or otherwise engages in sexual activity as a business; or

"(2) loiters in or within view of any public place for the purpose of being hired to engage in sexual activity."

It must necessarily follow, therefore, that, since the term "prostitution" encompasses only those

three generally defined activities, a person cannot be "promoting" prostitution unless he or she can be proven to have "encouraged," "induced" or "persuaded" these women, according to section 5902(b)(3), to either be an "inmate" of a house of prostitution, engage in sexual activity as a business or to loiter in or within view of any public place for the purpose of being hired to engage in sexual activity.

Secondly, in subsections (1) through (8) of section 5902(b) the Pennsylvania legislature saw fit to set forth certain specified acts which in its opinion constitute the "promoting" of prostitution. They are as follows:

(1) Owning, operating, controlling or managing a "house of prostitution";

(2) Obtaining the services of an individual for a house of prostitution or a place therein for one who would work there;

(3) Encouraging, inducing or intentionally causing another to become or remain a prostitute;

(4) Soliciting a person to "patronize" a prostitute;

(5) Obtaining the services of a prostitute for someone;

(6) Transporting or paying for transportation of a person into the Commonwealth of Pennsylvania with the intent to promote the engaging in of prostitution by such person;

(7) Leasing or permitting a place controlled by another, alone or in association with others, to be used regularly for prostitution or the promoting of prostitution, or failure by the owner to prevent such use by the "tenant" by ejecting the tenant, notifying the police or by other legally available means; or

(8) Soliciting, receiving or agreeing to receive any benefit for doing or agreeing to do anything set forth in numbers 1 through 7 herein.

Without a doubt, the Pennsylvania legislature intended to prohibit a wide range of prostitution-related offenses pursuant to section 5902(b). However, the acts which were defined by the legislature as constituting the "promotion" of prostitution all possess at least one of the same three elements as set forth in the introduction to section 5902(a): the defendant must be engaged in the activity (a) for the purpose of causing another to become an inmate of a house of prostitution, or (b) for the purpose of causing another to engage in sexual activity as a business or (c) for the purpose of causing another to "loiter" in or within view of any public place for the purpose of being hired to engage in sexual activity; and, each of those three alternative elements envision the obvious involvement of third persons.

Thirdly, the Official Comments state precisely the type of activity which the legislature intended to criminally prohibit by its enactment of section 5902. It reads in pertinent part:

*"Only sexual activity as a 'business' or 'for hire' is covered by this section which is consistent with existing law which defines prostitution as 'sexual intercourse for hire.'* The Penal Code of 1939, §103 (18 P.S. §4103)." (emphasis supplied)

In short, the Pennsylvania legislature in its wisdom sought to prohibit, as it had done for many years before the enactment of the more recent 1972 Criminal Code, only sexual activity engaged in *"as a business"* or *"for hire"* with third persons.

The act was not intended to apply to a situation where an individual directly offers another a dinner, a fur coat, a vacation trip or even a free modeling

portfolio or money in exchange for sex, where no business activity or hiring, in the usual sense of those words, takes place.

That legislative intent is further supported by dicta of the Superior Court of Pennsylvania in *Commonwealth v. Herriott*, 265 Pa. Super. 143, 401 A.2d 841 (1979).

In the *Herriott* case the defendant, Joseph Herriott, was charged along with a co-defendant, Frank Machi, with violating subsections (b)(2) and (b)(3) of section 5902 (although subsections (b)(3) and (8) being the principal subsections under which defendant is charged in the cases sub judice), arising out of their participation in "prostitution" activity involving a 15-year-old juvenile, Barbara Star. After running away from a detention center, the juvenile became friends with Frank Machi, who suggested to her that she become a prostitute, ostensibly to support herself. When she agreed to do so, she became subject to the direct control and management of Machi and Herriott. They explained to her the terms of the prostitution arrangement, dictated the procedure to be followed, determined the fee which was to be charged and collected and set her up with a "madam" who supervised all of the prostitution activities and controlled all of the income from third persons, therein described as their "customers." For an undisclosed period of time, the juvenile engaged in this sexual activity of prostitution on successive days in two different apartments with numerous men.

Later, defendants made arrangements for Ms. Star to perform acts of prostitution for a second "madam" in another apartment occupied by the madam. All money collected from that prostitution activity was turned over to the "madam." On each

occasion, the defendants received one-half of the money collected by the "madam."

During the period of time that Barbara Star was "working" for the defendants, they took her to dinner and kept her supplied with Valium.

In arguing that the evidence at trial was insufficient to sustain the court's and the jury's verdicts of guilty on the charges of promoting prostitution, the appellants contended that the Pennsylvania legislature, in enacting section 5902(b)(2), intended only to prohibit the "enticement" of individuals into fully staffed brothels, not to prohibit what the appellants characterized as merely an "informal" arrangement to commit acts of prostitution. The Superior Court declined to take such a narrow interpretation of the language of section 5902(b)(2), relying instead upon the definition of the term "house of prostitution" set forth in section 5902(f), which is as follows:

"Any place where prostitution or promotion of prostitution is *regularly carried on by one person under the control, management or supervision of another.*" (emphasis supplied)

Given that the juvenile worked on successive days during certain hours in various apartments, that she was under the direct control and management of the defendants and the two "madams" and that she had no control over either solicitation of the "customers" or the incoming money, the Superior Court had no difficulty in concluding that the prostitution which had been occurring was a business or an "organized operation," rather than merely a "casual occurrence." *Herriott, supra.*

In the cases presently before the court, there is no evidence to establish that defendant either "encouraged," "induced" or "persuaded" any of the three women (a) to become or remain an inmate of a house of prostitution, (b) to engage in sexual activity

as a business, or (c) to "loiter" in or near a public place for the sole purpose of being hired to engage in sexual activity.

Rather, the Commonwealth merely established that, on two occasions, defendant offered these women free portfolios and, on one occasion, money, if they would engage in sexual activity with him and him alone. Furthermore, since the Commonwealth has failed to establish that defendant "encouraged," "induced" or "persuaded" any or all of the women to either become or remain "inmates" of a house of prostitution, to engage in sexual activity as a business or to "loiter" in or near a public place for the sole purpose of engaging in sexual activity, it must necessarily follow that it has likewise failed to establish that defendant either "encouraged," "induced" or engaged in "soliciting, receiving or agreeing to receive any benefit in exchange for these women engaging in sexual activity with others" prohibited by the prostitution statute.[4]

That is hardly the "organized operation" the Pennsylvania legislature sought to prohibit under this prostitution statute.

For while defendant's conduct was, without a doubt, what most in our community would term "sleazy," "immoral" and "utterly deplorable," his acts simply do not constitute the crime of promoting prostitution as presently defined by the Pennsylvania legislature and from which a jail sentence could be imposed if he were to be found guilty by a jury.

In short, the function of the trial court is not to manage morality or temper human behavior. Its charge is to instead examine what law there is and apply it to the facts proven in the case.

---

4. The Commonwealth in criminal action no. 1109-90 charges defendant with violating subsection (b)(3) and (b)(8) of section 5902 of the Crimes Code.

22

Notwithstanding the Commonwealth's failure to establish any "criminal" activity on the part of defendant in these cases, defendant may still be subject to "civil" liability for money damages arising out of what may very well be a violation of the women's civil rights or rights to privacy, should they elect to pursue such a remedy.

For the foregoing reasons, the court hereby affirms its attached order granting defendant's petition for writ of habeas corpus in all respects.

## ORDER

And now, December 19, 1990, upon consideration of the petition for writ of habeas corpus filed by defendant in the above-captioned cases, in which defendant is charged with promoting prostitution in violation of 18 Pa.C.S. §§5902(b)(3) and 5902(b)(8) of the 1972 Crimes Code, the court hereby finds that the evidence, considered in the light most favorable to the Commonwealth and the present status of the law, is insufficient to sustain the charges.

Accordingly, the writ of habeas corpus is granted and defendant is discharged.

The Clerk of Courts is hereby directed to furnish copies of this order to the District Attorney's Office; Emmanuel H. Dimitriou, Esq., attorney for defendant; and to defendant individually.