Commonwealth *v.* Burgos, Appellant.

326

Submitted September 11, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*D. Patrick Zimmerman,* and *Zimmerman & Going,* for appellant.

*D. Richard Eckman,* First Assistant District Attorney, and *Henry J. Rutherford,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., December 11, 1972:

This is an appeal from the Order of the Court of Common Pleas of Lancaster County, Criminal Division. After waiving trial by jury, and stipulating that testimony produced at a suppression hearing be considered in determining his guilt or innocence, appellant

was found guilty and sentenced to one to two years imprisonment for possession of marijuana in violation of The Drug, Device and Cosmetic Act.

The only question presented on this appeal is whether the lower court erred in denying appellant's motion to suppress. We believe it did.

On August 13, 1970, between 3:30 and 4:00 A.M., appellant was travelling east on the Pennsylvania Turnpike when he had a minor accident at a service plaza. Two troopers from the state police investigated the accident, suggested that appellant sleep if he was tired, then drove in an easterly direction, made a u-turn and proceeded west. Then, they observed appellant leaving the plaza on the wrong lane back to the turnpike. He corrected his mistake and proceeded back to the highway. The troopers made another u-turn, followed the appellant, and finally directed him to pull off the highway.

Appellant got out of his car and was told that he was under arrest for the summary traffic violation of going the wrong way on a one way street. At that time, as appellant was standing between his car and the police car, one of the officers (Officer Stofko) went to the passenger side of the appellant's car and attempted to open the door in order to look for "anything in violation of the law." Finding it locked, he requested that appellant open it, and appellant complied. When the door opened, a shaving kit belonging to appellant fell to the ground. The officer asked what it was. Appellant replied that it was his shaving kit and unzipped the top, exposing its contents. One of the officers observed a number of vials in the kit, one of which contained marijuana.

Appellant was again formally placed under arrest, and given his *Miranda* warnings. His car was locked and subsequently towed to the police barracks. A war-

rant was then issued for a search of the car and the subsequent search uncovered ten kilos of marijuana.

The lower court was of the opinion that the initial observation of the marijuana was not the result of any illegal search and seizure but was the result of the wholly voluntary act of appellant in displaying the contents of the shaving kit. In our view of the case, this analysis of the circumstances was insufficient and based upon an erroneous finding that the police had an independent right to search the interior of the vehicle.

The lower court reasoned that the police had the right to conduct a self-protective search of the interior of the automobile for weapons. In this, the lower court was clearly in error, as our courts have held that the search of an automobile subsequent to an arrest for a traffic violation must be supported by independent probable cause to believe that a felony has been committed by the occupants, that the automobile has been used in the commission of a felony, that evidence of a crime is concealed in the vehicle, or that there are weapons therein which are accessible to the occupants. *Commonwealth v. Lewis*, 442 Pa. 98, 275 A. 2d 51 (1971); *Commonwealth v. Dussell*, 439 Pa. 392, 266 A. 2d 659 (1970); *Commonwealth v. Bryner*, 218 Pa. Superior Ct. 316, 280 A. 2d 588 (1971). In the instant case, appellant was standing between his car and the police cruiser in the close company of one of the officers. It can hardly be said that weapons were accessible to him at that time or that there was probable cause to believe appellant to be involved in any criminal activity. Thus, the inception of the search was clearly illegal.

As the police did not at this time have the authority to search the car, we must determine whether appellant effectively consented to a search of the automobile

when he opened the car door at the request of Officer Stofko.

Since consent to an otherwise illegal search involves a waiver of the right to be free from such searches, the consent in question must meet the test of constitutional waiver. *U.S. v. Blalock*, 255 F. Supp. 268 (E.D. Pa. 1966). That is, the waiver must meet two requirements: it must be (1) voluntary, and (2) intelligent. *Judd v. United States*, 190 F. 2d 649 (D.C. Cir. 1951); *U.S. ex rel. Gockley v. Myers*, 378 F. 2d 398 (3d Cir. 1967); *Porter v. Ashmore*, 298 F. Supp. 951 (D.C. S.C. 1969), rev'd on other grounds, 421 F. 2d 1186 (4th Cir. 1970); *U.S. v. Blalock*, supra; *U.S. v. Moderacki*, 280 F. Supp. 633 (D.C. Del. 1968); *U.S. v. Menke*, 339 F. Supp. 1023 (W.D. Pa. 1972).

Since a fundamental right guaranteed by the Constitution is involved, a waiver will not lightly be found. *Commonwealth ex rel. Whiting v. Cavell*, 244 F. Supp. 560, aff'd per curiam, 358 F. 2d 132 (C.A. 3d Cir. 1966). The burden of proving a valid waiver of the right to be free from unreasonable searches and seizures rests upon the state, *Bumper v. North Carolina*, 391 U.S. 543, 88 S. Ct. 1788 (1968); *Commonwealth v. Stork*, 442 Pa. 197, 275 A. 2d 362 (1971), and must be proven by clear and positive evidence. *Commonwealth v. McCloskey*, 217 Pa. Superior Ct. 432, 272 A. 2d 271 (1970).

"Consent must be freely given to be effective." This means there must be a *total* absence of coercion, express or implied. *Commonwealth v. Harris*, 429 Pa. 215, 221, 239 A. 2d 290 (1968) (emphasis supplied), (consent held involuntary where the accused, handcuffed and in the presence of two police officers, gave permission to search his car). Mere acquiescence in the orders, suggestions, or requests of the police can never be equated with consent. *Judd v. United States*, supra; *Bumper v. North Carolina*, 391 U.S. 543, 88 S. Ct. 1788

(1968). Thus, a finding of voluntary consent can never rest solely on the fact that an accused did some consensual act or gave permission to the police to search, but is a question of fact which must be decided in light of the circumstances attending the alleged consent. *U. S. ex rel. Harris v. Hendricks,* 423 F. 2d 1096 (3d Cir. 1970).

Among the factors to be considered are the setting in which the consent was obtained; what was said and done by the parties present; the age, intelligence, and educational background of the person consenting. *U.S. ex rel. Harris v. Hendricks,* supra. One important factor in considering the setting in which the consent is obtained is whether the accused was under arrest at the time. The fact that an accused is under arrest at the time the consent is given places a higher burden on the state to prove that the consent was voluntary. *Judd v. United States,* supra; *Burke v. United States,* 328 F. 2d 399 (1st Cir. 1964) ; *United States v. Page,* 302 F. 2d 81 (9th Cir. 1962) ; *Porter v. Ashmore,* 298 F. Supp. 951 (D.C.S.C. 1969), rev'd on other grounds, 421 F. 2d 1186 (4th Cir. 1970), because mere acquiescence to police orders or suggestions is not infrequent in such situations. *Judd v. United States,* supra.

Another important fact to be noted in this case is that, prior to the request that appellant open the door, Officer Stofko had already attempted to enter the car. This was a clear indication that a search was about to be conducted. Consent under such circumstances can hardly be said to be voluntary, for it is unlikely that a suspect would assert opposition to a search which appeared inevitable. *Bumper v. North Carolina,* supra. *Farris v. United States,* 24 F. 2d 639 (9th Cir. 1928) ; *Amos v. United States,* 255 U.S. 313, 41 S. Ct. 266 (1921) ; *Lee v. United States,* 232 F. 2d 354 (D.C. Cir. 1956) ; compare *McDonald v. United States,* 307 F. 2d 272 (10th Cir. 1962).

Added to these elements indicating involuntariness, is the fact that appellant did not understand English very well. See *U.S. ex rel. Harris v. Hendricks,* supra. While this factor would seem more appropriately discussed in an analysis of the intelligence of the consent, it is an appropriate inquiry here because "under many circumstances a reasonable person might read an officer's polite request as a courteous expression of a demand backed by force of law." *Bustamonte v. Schneckloth,* 448 F. 2d 699, 701 (9th Cir. 1971). Thus, a person without a facility in the English language might understand a request, however phrased, to be an order and thus merely acquiesce, rather than voluntarily consent to the request.

We would hesitate to hold that any one of these elements would be sufficient to vitiate an accused's consent to a search. But taken together, especially noting the show of authority by Officer Stofko, these elements tend very strongly to indicate that there was not a total absence of duress. *Commonwealth v. Harris,* supra. The Commonwealth has thus not met its burden of proving the consent to have been voluntary.

Since the consent given in this case was not voluntary, there is no need to reach the question posed by appellant whether the consent was intelligent absent a warning that appellant had a right to withhold his consent to an otherwise illegal search.

When appellant unzipped the shaving kit, the same coercive conditions were present as when the door was opened. The police officer's response of "what's that", cannot be considered to be a polite inquiry in regard to the nature of the object itself. Rather, given the facts that it was made by a police officer who had appellant under arrest, that the police had already indicated their interest in the contents of the car by beginning to search the car, and that appellant had a limited

facility with the English language, the police response should be considered realistically as an order to observe the contents of the kit.

Furthermore, the exposure of the kit came as a direct result of the prior involuntary act of opening the door, which, in turn, resulted from the inception of an illegal search.[1] While the law recognizes that a voluntary act may effectively dissipate the taint of a previous illegality, that act, as here, will not be deemed voluntary unless it is free from any element of coerciveness attending the initial illegality. *Commonwealth v. Bishop,* 425 Pa. 175, 228 A. 2d 661 (1967). Moreover, the temporal proximity between the initial illegality of beginning to search the car and the subsequent seizure of the evidence provides strong evidence of the tainted connection between the two. *Commonwealth v. Bishop,* supra at n 7. *Commonwealth v. Rowe,* 445 Pa. 454, 459 at n. 4, 282 A. 2d 319 (1971); *Commonwealth ex rel. Craig v. Maroney,* 348 F. 2d 22, 29 (3d Cir. 1965).

Given the unbroken chain of events from the inception of the illegal search to the seizure of the evidence, the attendant coercive environment, and the appellant's inability to understand the implications of the police requests, it must be concluded that the evidence should have been suppressed.

The judgment is, therefore, reversed, and appellant granted a new trial.

WRIGHT, P. J., WATKINS and JACOBS, JJ., dissent.

---

[1] See *Commonwealth v. Watkins,* 217 Pa. Superior Ct. 332, 334, 272 A. 2d 212 (1970): "Where an arrest or entry is illegal ab initio, the 'plain view' doctrine is inapplicable. This is true even if defendant himself reveals the illegal goods to the police officers."