361 A.2d 414

COMMONWEALTH of Pennsylvania, Appellant,

v.

Allen WHITNER.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Herbert JONES.

Superior Court of Pennsylvania.

June 28, 1976.

318

Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., M. Stotland, Philadelphia, for appellant.

Henry J. Lunardi, Philadelphia, for appellee in No. 741.

Lee Mandell, Philadelphia, for appellee in No. 742.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

In the instant case the Commonwealth appeals from the lower court's order granting appellees a new trial and suppressing evidence which was the fruit of allegedly illegal arrests, searches and seizures.[1] Appellees had been convicted, after a nonjury trial, of burglary,[2] robbery,[3] and conspiracy.[4] In addition, appellee-Jones was

---

1. See *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963); *Commonwealth v. Guardiani*, 226 Pa.Super. 435, 310 A.2d 422 (1973).

2. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 3502 (1974). [Hereinafter Crimes Code.]

3. Crimes Code, 18 Pa.C.S. § 3701.

4. Crimes Code, 18 Pa.C.S. § 903.

convicted of various weapons offenses.[5] Because we find that appellees were legally arrested upon probable cause and that the physical evidence was properly seized, we will reverse the order of the court which heard the post-verdict motions and remand for sentencing.

On the night of January 3, 1974, at approximately 10:45 P.M., Officers Cochrane and Floirendo of the Philadelphia Police Department were cruising the high-crime neighborhood in the vicinity of 15th and Diamond Streets, wearing plainclothes and driving an unmarked car. The night was cold and very few people had braved the chill air, most having chosen to remain in the relative comfort of their homes. Two of the venturesome few were appellees Jones and Whitner, when Officers Cochrane and Floirendo first observed Jones and Whitner, appellees were nearing the corner of 15th and Diamond walking east. Jones was carrying a supermarket-sized shopping bag in both arms, and Whitner had a suitcase. The policemen stopped for the red light at 15th and Diamond and Jones and Whitner crossed Diamond Street behind the car, an act which the officers determined to be furtive under the circumstances. The policemen felt that appellees' conduct warranted further observation; so, when the light turned green, Officers Cochrane and Floirendo proceeded down Diamond Street only one-half block where they turned into a sidestreet and got out of their patrol car. When the officers emerged from the sidestreet and Jones saw them, he threw the shopping bag onto the sidewalk and ran away. Officer Cochrane saw that shirts in cellophane wrappers spilled from the bag, so he gave chase. He caught Jones several blocks away.

In the meantime, Whitner had also begun to run away, but when Officer Floirendo told him to halt, Whitner obeyed. Floirendo then had Whitner "spreadeagle" on a wall and began a patdown. When he reached appel-

5. Crimes Code, 18 Pa.C.S. §§ 907(a) & (b), 908.

lee's pocket, and felt a suspicious lump, Whitner muttered an expletive and removed his hands from the wall. Floirendo stepped back and reached for his nightstick. At the same time Whitner grabbed the suitcase, slammed it into Floirendo's chest and ran away. Fortunately, other patrol cars which had been summoned began to arrive on the scene and other policemen aided Floirendo in capturing and subduing Whitner. After Floirendo retrieved the suitcase some silver coins spilled out. Opening the suitcase Floirendo found jars of coins and jewelry. The wad in Whitner's pocket proved to be a roll of money totalling one hundred dollars.

While all this was taking place, the residents of a second floor apartment at 1405 Diamond Street untied themselves and called the police to report that they had just been robbed. They subsequently identified the property recovered from Jones and Whitner as theirs, and identified appellees as the robbers.

Although the suppression hearing judge ruled all the physical evidence to be admissible, the judge on post-verdict motions reversed that ruling and granted appellees a new trial.[6] The Commonwealth then brought this appeal.[7]

The pivotal issue in this case is whether Officers Cochrane and Floirendo had a sufficient factual basis to take the action that they did which led to the arrest of appellees and the search and seizure of the suitcase and shopping bag.

█ █ Appellee Jones argues that his arrest was illegal because this case is indistinguishable from *Commonwealth v. Jeffries*, 454 Pa. 320, 311 A.2d 914 (1973).

6. See Pa.R.Crim.P. 1123(e); *Commonwealth v. Bonser*, 215 Pa. Super. 452, 258 A.2d 675 (1969).

7. See *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963); *Commonwealth v. Guardiani*, 226 Pa.Super. 435, 310 A.2d 422 (1973).

We disagree. It is certainly true that "flight, in and of itself, is not sufficient to constitute probable cause for otherwise anyone, who does not desire to talk to the police and who either walks or runs away would always be subject to a legal arrest." *Commonwealth v. Pegram,* 450 Pa. 590, 301 A.2d 695 (1973). However, flight coupled with some other fact, such as the sight of contraband, may establish probable cause to arrest. *Commonwealth v. Jeffries,* 454 Pa. at 324, 311 A.2d 914. In the instant case, on seeing the police approaching, appellee Jones abandoned the ostensibly valuable bag full of shirts and fled. Taking these two facts along with lateness of the hour and the nature of the neighborhood, Officer Cochrane had probable cause to believe that the shirts were stolen, and that Jones knew they were stolen. On these facts Officer Cochrane had probable cause to believe that Jones had committed the crime of receiving stolen goods in his presence and, therefore, properly pursued and arrested him. To hold otherwise requires engaging in the kind of quibbling over legalistic nuances which often burdens and stymies the police.[8] As Judge Hoffman stated in speaking for the majority in *Commonwealth v. Ellis,* 233 Pa.Super. 169, 174, 335 A.2d 512, 515 (1975):

> "We do not suggest that the Fourth Amendment lies dormant during the night hours. We do recognize, however, that some activities that are commonplace during daytime, business hours give rise to suspicion during other times of the day."

The police conduct prior to Jones' abandoning the shirts is different from that which occurred in *Jeffries,* also. In *Jeffries,* the cigarette package containing the contraband was abandoned because of the illegal conduct of the police; and, hence, it was the "fruit of

8. See H. Schwartz, Stop and Frisk (A Case Study in Judicial Control of the Police), 58 J.Crim.L.C. & P.S. 433, 448–49 (1967).

the poisonous tree" under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In the case at bar, Jones abandoned the stolen shirts before the police had spoken to him or chased him; so that, prior to the abandonment, there was no conduct by the police which was even arguably illegal. With respect to this issue the instant case is indistinguishable from *United States v. Martin*, 386 F.2d 213 (3d Cir. 1967).[9] Therefore, the court on post-verdict motions erred when it ruled that the shopping bag, and the testimony concerning it, could not be admitted into evidence.

In Whitner's case the analysis differs, but the facts still justify his arrest, and the search and seizure of the suitcase. Even if we assume for the sake of argument that the fact that Whitner was the companion of Jones, and that Whitner also demonstrated an inclination to flee, did not give rise to a reasonable belief that Whitner was involved in criminal activity under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), Whitner was nevertheless properly arrested.

While it is true that evidence found subsequent to an illegal arrest cannot be used to purge the arrest of its illegality,[10] conduct which occurs after the arrest and amounts to a crime in and of itself may establish an independent basis for retaining a suspect in custody. In the instant case, regardless of whether Officer Floirendo was justified in stopping Whitner and searching him for weapons, Whitner committed a crime when he struck the officer with the suitcase. Section 505 of the

9. On questions of constitutional proportions, considerations of comity require that decisions of the Third Circuit be treated as binding authority, unless and until the United States Supreme Court speaks to the contrary. See *Commonwealth v. Negri*, 419 Pa. 117, 213 A.2d 670 (1965). Cf. *Commonwealth v. McLaughlin*, 231 Pa.Super. 129, 136–37 at n. 9, 332 A.2d 812 (1974).

10. *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *Commonwealth v. Jeffries*, supra.

Crimes Code,[11] in force at the time of Whitner's arrest, provides:

"(b) Limitations on justifying necessity for use of force.—

(1) The use of force is not justifiable under this section:

(i) to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful;

Indisputably, Whitner committed an assault on Officer Floirendo when he struck him with the suitcase;[12] and, ordinarily self-defense would be his only justification.[13] However, Section 505 of the Crimes Code specifically precludes this defense on these facts. Hence, Officer Floirendo had probable cause to arrest Whitner for a misdemeanor committed in his presence (an assault) and seize the suitcase. When he seized the suitcase and saw the coins falling from it, coupled with the facts already within his knowledge, he was entitled to open it and examine its contents. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). See also *United States v. Bradley*, 455 F.2d 1181 (1st Cir. 1972). Finding the coins and jewelry, he could then search appellant for other fruits of the crime (receiving stolen goods, at least) and seize the $100 in cash.

11. Crimes Code, 18 Pa.C.S. § 505 (1974).

12. Crimes Code, 18 Pa.C.S. § 2701.

13. This case is distinguishable from *Commonwealth v. Stortecky*, 238 Pa.Super. 117, 352 A.2d 491 (Filed: 12/22/75) wherein appellant was charged with aggravated assault and resisting arrest under Sections 2702 and 5104 of the Crimes Code, since a lawful arrest is a prerequisite to committing those crimes. However, a simple assault under Section 2701 may be committed without reference to the lawfulness of an arrest. This analysis resolves the paradox posed by Judge Hoffman in footnote four of his dissenting opinion in *Stortecky* by demonstrating that there is indeed a crime to which Section 505(b)(1)(i) applies when a police officer effects an unlawful arrest.

*United States v. Robinson,* supra. Thus, the suppression court properly found that all the evidence acquired as the result of the arrest of Whitner could be introduced into evidence; and, at the hearing on appellee's post-verdict motions, the lower court erred in granting appellee's motion for a new trial.

For the foregoing reasons, the order of the lower court granting appellee's motions for a new trial is reversed; the verdicts of guilty are reinstated; and, the case is remanded for sentencing.

SPAETH, J., concurs in the result in No. 741, and dissents in No. 742.