380 A.2d 861

COMMONWEALTH of Pennsylvania

v.

Robert George TIMKO, Jr., Appellant.

Superior Court of Pennsylvania.

Argued June 16, 1976.

Decided Dec. 2, 1977.

444

Alan Ellis, State College, for appellant.

Robert F. Banks, Assistant District Attorney, Greenville, with him Allen E. Ertel, District Attorney, Williamsport, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

In March of 1975 appellant was tried non-jury on charges of possession of marijuana, possession of marijuana with intent to deliver, carrying a concealed weapon without a license, and disorderly conduct. At the conclusion of the Commonwealth's case a demurrer was sustained to the disorderly conduct charge. Appellant was subsequently acquitted of the delivery charge and found guilty of possession of marijuana and carrying a concealed weapon. Following post-verdict motions, however, judgment was arrested on the weapon's violation. From the imposition of a sentence of one year's probation, this appeal ensued.

In the early evening of September 16, 1974, Officer Phillip Williams of the Williamsport Police Force was driving his cruiser in the southbound lane of Packer Street approaching the intersection of Packer and Market Streets. As he neared the intersection Officer Williams observed the appellant, who was operating a Volkswagen van, attempting to turn his vehicle from Market Street into the northbound lane of Packer Street. In making the turn appellant almost struck an automobile in the southbound lane of Packer Street directly in front of Officer Williams' cruiser. Appellant managed to bring his vehicle back into the proper lane momentarily, but then again drifted across the center line, this time almost hitting Officer Williams' cruiser. As he passed by the cruiser, appellant looked out his open window and made an obscene gesture to Officer Williams. The officer then turned his vehicle around and pursued appellant with the intention of arresting him for reckless driving.

The pursuit ended only moments later when appellant attempted to park his vehicle. In maneuvering the van into a parking space appellant struck the cars parked immediately in front of and to the rear of his vehicle. When Officer Williams approached the van on foot, appellant rolled up his window and locked himself inside. The officer's request for appellant's license and owner's registration was met with an obscene refusal. In the course of this exchange Officer Williams observed several boxes of shotgun shells in the van and decided to call for assistance. When several other officers arrived, appellant greeted them with more profanity and persisted in refusing to exit his vehicle. Shortly thereafter appellant started the van's engine and attempted to pull out of the parking space. While appellant was trying to pull away, Officer Jett was attempting to pry open one of the van's doors with a tire iron. As Officer Jett was working on the door, appellant looked at him and then reached towards a brown leather bag that was lying on the rear seat. At this point, Officer Jett, being fully aware of the shell boxes, used the tire iron to break the door window on the driver's side of the van. The officers then unlocked the door and pulled appellant out of the van. While appellant was being frisked outside the van,[1] Officer Jett seized and opened the zippered leather valise. The search revealed two packages of marijuana[2] and a loaded revolver.

Appellant's sole contention is that the contents of the leather valise should have been suppressed as the product of an illegal search and seizure. We disagree.

In determining whether a particular search will withstand constitutional scrutiny it must be realized that "[t]he ultimate standard set forth in the Fourth Amendment is reasonableness." *Cady v. Dombrowski*, 413 U.S. 433, 439,

---

1. The record is not entirely clear as to whether appellant was handcuffed at this juncture. In any event, it is certain that appellant was in the custody of at least two police officers while he was standing alongside of the van.

2. Subsequent analysis established the total weight of the marijuana to be 545 grams.

93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973). It is also true and fundamental that "searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). Instantly, the Commonwealth has advanced two alternative theories in support of the warrantless seizure and search of the valise. Since we conclude that the evidence was admissible under the "plain view" doctrine, *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), we need not address the applicability of any other possible theory.[3]

In *Coolidge*, 403 U.S. 464–473, 91 S.Ct. 2022, the Supreme Court discussed at length the "plain view" exception. The Court summarized the doctrine as follows:

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification— whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." 403 U.S. at 466, 91 S.Ct. at 2038.

**3.** Although the court below held the contraband was admissible on the grounds that it was seized incident to appellant's arrest, it is well settled that where the judgment of the lower court is correct it can be affirmed on appeal regardless of the rationale employed by the lower court to sustain its action. *Commonwealth v. Whitehouse*, 222 Pa.Super. 127, 292 A.2d 469 (1972).

In the case at bar, Officer Williams clearly had the right to stop appellant's vehicle once he determined it was being operated in a reckless manner. See *Commonwealth v. Barkley*, 234 Pa.Super. 503, 341 A.2d 192 (1975). Consequently, Officer Williams and his fellow police officers had a "prior justification" for looking inside the van while they were attempting to persuade the appellant to exit the van and produce his license and ownership registration. See *Commonwealth v. Tatro*, 223 Pa.Super. 278, 297 A.2d 139 (1972); *Commonwealth v. Clelland*, 227 Pa.Super. 384, 323 A.2d 60 (1974). Furthermore, there is no indication that appellant was stopped because Officer Williams suspected that the vehicle was being used to transport a weapon or contraband. Thus, the officer's observation of the leather bag was "inadvertent." *Coolidge, supra.* Finally, since appellant reached for the bag during the course of his resisting arrest, the officer's seizure of the bag was based upon a reasonable belief that the bag, or its contents, were either evidence or an instrumentality of the crime of resisting arrest. Hence, at the time they seized the bag it was "immediately apparent to the police that they [had] evidence before them." *Coolidge*, 403 U.S. at 466, 91 S.Ct. at 2038.

■■ The only remaining question is whether the police were entitled to open the bag, after having legally seized it, to examine its contents without first obtaining a warrant. Once again, we are inclined to agree with the Commonwealth that the warrantless search was reasonable. First, the Supreme Court has held that containers seized from the person of an arrestee may be legally opened and inspected without obtaining a warrant. *United States v. Robinson*, 414 U.S. 218, 236, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Gustafson v. Florida*, 414 U.S. 260, 266, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). Similarly, this court has held in analogous cases that such a warrantless inspection is reasonable. *Commonwealth v. Whitner*, 241 Pa.Super. 316, 361 A.2d 414 (1976); *Commonwealth v. Spriggs*, 224 Pa.Super. 76, 302 A.2d 442 (1973). In *Spriggs* this court pertinently observed:

"There is no logical limitation upon the right of police discovering a container upon the appellant that may contain a weapon or contraband to search the container's contents and seize such evidence incident to a lawful arrest." *Id.* 224 Pa.Super. at 79, 302 A.2d at 443. It is of no consequence whether the *container's* seizure occurred as a result of a search incident to a legal arrest, or whether the container's seizure occurred because it was both evidence of a crime and in plain view. Once it had been legally seized it could be legally inspected. Indeed, under the facts in the instant case the police had more cause to believe the bag contained a weapon or contraband than the police had in either *Robinson, Gustafson* or *Spriggs*. A *fortiori*, the court below did not err in refusing to suppress the evidentiary use of its contents.

For the foregoing reasons, the judgment of sentence is affirmed.

JACOBS, J., concurs in the result.

SPAETH, J., files a dissenting opinion in which HOFFMAN, J., joins.

SPAETH, Judge, dissenting:

The majority summarizes its conclusion as follows:

It is of no consequence whether the *container's* seizure occurred as a result of a search incident to a legal arrest, or whether the container's seizure occurred because it was both evidence of a crime and in plain view. Once it had been legally seized it could be legally inspected.

At 448.

I disagree with this conclusion in every one of its three aspects (which may conveniently be considered in reverse order).

—1—

It is not the law that something "legally seized [may] be legally inspected." It may well be that the police have legally seized something but are nevertheless not entitled to inspect it. For example, the police may be entitled to seize

luggage, but not entitled to open it without a search warrant. *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).[1] Cases such as this one, in which the police have stopped an automobile, are perhaps the most familiar example of a situation where the police may seize but not search. In *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the Court said:

> The word "automobile" is not a talisman in whose presence the Fourth Amendment fades away and disappears.

1. In *Chadwick* federal agents arrested three suspected drug couriers at a train station on the basis of probable cause to believe the suspects' footlocker contained marihuana. The footlocker was under the exclusive control of the agents from the time of arrest and was transported along with the suspects to a federal building. An hour and a half later the agents opened the footlocker without the suspects' consent or a search warrant. The Government argued that the "Fourth Amendment Warrant Clause protects only interests traditionally identified with the home," and that there was

> no evidence that the Framers of the Fourth Amendment intended to disturb the established practice of permitting warrantless searches outside the home, or to modify the initial clause of the Fourth Amendment by making warrantless searches supported by probable cause *per se* unreasonable.

*Id.* at 6, 97 S.Ct. at 2481.

This contention was emphatically rejected by the Court:

> We do not agree that the Warrant Clause protects only dwellings and other specifically designated locales. As we have noted before, the Fourth Amendment "protects people, not places," *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967); more particularly, it protects people from unreasonable government intrusions into their legitimate expectations of privacy. In this case, the Warrant Clause makes a significant contribution to that protection. The question, then, is whether a warrantless search in these circumstances was unreasonable . . . .

*Id.* at 7, 97 S.Ct. at 2481.

The Court concluded:

> In this case, important Fourth Amendment privacy interests were at stake. By placing personal effects inside a double-locked footlocker, respondents manifested an expectation that the contents would remain free from public examination. No less than one who locks the door of his home against intruders, one who safeguards his personal possessions in this manner is due the protection of the Fourth Amendment Warrant Clause. There being no exigency, it was unreasonable for the Government to conduct this search without the safeguards a judicial warrant provides.

*Id.* at 11, 97 S.Ct. at 2483.

*Id.* at 461, 91 S.Ct. at 2035.

In *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875 (1973), the Court said:

> An automobile is a place where an individual has a reasonable expectation of privacy. . . . [W]hen a police officer stops a vehicle he has "seized" the vehicle and its occupants, and thus, the protections of the Fourth Amendment must be considered. . . ."

*Id.* 453 Pa. at 111, 307 A.2d at 877 (citations omitted). And in *Commonwealth v. Dussell*, 439 Pa. 392, 266 A.2d 659 (1970), the Court said:

> The Commonwealth does not, nor could it, contend that because the driver of the automobile was criminally liable for two violations of The Vehicle Code . . ., that this, without more, permitted a warrantless search of the automobile.[4]

> [4] There is no right to search either the automobile or the occupants when an arrest is made for an ordinary traffic offense . . . ..

*Id.* 439 Pa. at 395, 266 A.2d at 661. (citations omitted) *See also: Commonwealth v. Mimms*, 471 Pa. 546, 370 A.2d 1157 (1977); *Commonwealth v. Murray*, 460 Pa. 53, 331 A.2d 414 (1975).

Consequently, the fact that "Officer Williams clearly had the right to stop appellant's vehicle," at 447, only shows that the officer could legally seize the vehicle; it in no way shows that he could legally search, or "inspect", it.

—2—

The "container" could not be seized "because it was both evidence of a crime and in plain view." The argument is circular. *If* something is evidence and in plain view, it may be seized.[2] The question, however, is whether the "container" *was* evidence. Simply saying it was "evidence" does not make it so.

In *Coolidge v. New Hampshire, supra,* the Court said:

[2] That is, it may be if the officer was entitled to be where he was (and here, I agree he was). *Coolidge v. New Hampshire, supra,* 403 U.S. at 465, 91 S.Ct. 2022.

Of course, the extension of the original justification is legitimate *only where it is immediately apparent to the police that they have evidence before them*; the "plain view" doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges.

*Id.*, 403 U.S. at 466, 91 S.Ct. at 2038 (emphasis added). Here it was *never* apparent to the police that "the zippered leather valise," at 863, was evidence *until after* they had "seized and opened" it, *Id.*

—3—

Finally, neither may the unzippering and search of the valise be justified "as a result of a search incident to a legal arrest" per *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), and *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). At 448.

It is by no means clear that either *Robinson* or *Gustafson* states the law of Pennsylvania. *Commonwealth v. Dussell, supra*, is at least arguably *contra*; we may hold that the State Constitution imposes stricter requirements than does the Federal. *Commonwealth v. Romberger*, 464 Pa. 488, 347 A.2d 460 (1975); *Commonwealth v. Triplett*, 462 Pa. 244, 341 A.2d 62 (1975); *Commonwealth v. Johnson*, 247 Pa.Super. 208, 372 A.2d 11 (1977) (dissenting opinion). Even if, however, *Robinson* and *Gustafson* are consistent with the law of Pennsylvania, they are not in point. Both concerned the search of a defendant's *person* incident to a lawful arrest: *Robinson* (crumpled up cigarette package in defendant's left breast pocket); *Gustafson* (cigarette box in defendant's left front coat pocket). Here, as the majority acknowledges, the police "pulled appellant out of the van [and] [w]hile appellant was being frisked *outside* the van," at 445 (emphasis added), they went *inside* the van and "seized and opened the zippered leather valise," *Id.* Nothing in *Robinson* or *Gustafson* holds or implies that such a search is valid as incident to a lawful arrest. Nothing in our cases does either. *Common-*

*wealth v. Whitner,* 241 Pa.Super. 316, 361 A.2d 414 (1976), and *Commonwealth v. Spriggs,* 224 Pa.Super. 76, 302 A.2d 442 (1973), cited by the majority, both involved a search of the defendant's person.

The dispositive case, which is not cited by the majority, is *United States v. Chadwick, supra.* As discussed at the beginning of this opinion, *Chadwick* is an example of a situation where the police may be entitled to seize but not to search. In *Chadwick,* in reaffirming the limits of a search incident to .a lawful arrest, the Court said:

> Such searches may be conducted without a warrant, and they may also be made whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence. The potential dangers lurking in all custodial arrests makes warrantless searches of items within the "immediate control" area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Terry v. Ohio, supra,* [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1962)]. However, warrantless searches of luggage of other property seized at the time of an arrest cannot be justified as incident to that arrest either if the "search is remote in time or place from the arrest." *Preston v. United States,* 376 U.S. [364] at 367, 84 S.Ct. 881, 11 L.Ed.2d 777, or no exigency exists. Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.[9]

[9] Of course, there may be other justifications for a warrantless search of luggage taken from a suspect at the time of his arrest; for example, if officers have reason to believe that luggage contains some immediately dangerous instrumentality, such as explosives, it would be foolhardy to transport it to the station house without

opening the luggage and disarming the weapon. *See, e. g., United States v. Johnson,* 467 F.2d 630, 639 (CA2 1972).

433 U.S. at 15, 97 S.Ct. at 2485.

Here, I quite agree that the police were entitled to seize and arrest appellant, and to search his person. It might be argued that they were not entitled to go into the van and seize the valise, *Commonwealth v. Burgos,* 223 Pa.Super. 325, 328, 299 A.2d 34, 36 (1972); but I should not accept that argument. *Burgos* was a routine traffic violation stop. Here, given appellant's abusive and violent behavior, it seems to me that it was reasonable for one of the officers to go into the van and seize the valise, while appellant was being subdued; the officer might have thought to himself: "Probably my fellow officers will subdue this wild man, but maybe he will break away from them and grab that valise I saw him reach for. I had better get it first." However, none of this matters. What matters is that *once the officer had seized* the valise, there was no longer any danger that appellant might gain access to it. This is especially clear since, while the officer was getting the valise, appellant did not break away; he was arrested, searched, handcuffed, and put in a police car.[3] Therefore: The question in this case is not whether the police had the right to seize and arrest appellant and search his person. They did. Neither is the question whether the police had the right to seize the valise. They did (at least, I think so). Rather, the question is whether, *having done these things,* the police had the right, *without a search warrant,* to unzipper and search the valise. It is clear from *Chadwick* that they did not.

The judgment of sentence should be vacated, and a new trial granted.

HOFFMAN, J., joins in this opinion.

3. Appellant argues that the trial transcript shows that the valise was gotten later, and indeed it can be read that way. (N.T. Trial 8) However, the suppression transcript can be read as showing that the valise was seized while appellant was being subdued. (N.T. Suppression Hearing 26–27)