417 A.2d 627

**COMMONWEALTH of Pennsylvania**

v.

**Marilyn Susan STAGLIANO, Appellant.**

Superior Court of Pennsylvania.

Submitted March 23, 1979.

Filed Dec. 14, 1979.

---

[1]. Act of December 6, 1972, P.L. 1482; 18 Pa.C.S.A. § 5702 (repealed 1978).

238

Nino V. Tinari, Philadelphia, for appellant.

James A. Cunningham, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before CERCONE, President Judge, and WATKINS and HOFFMAN, JJ.

CERCONE, President Judge:

This case presents the issue whether the purse of a female passenger in an automobile may be seized and searched, consistently with the Fourth Amendment,[1] as incident to the lawful arrest of the operator of the vehicle, when the operator is outside the vehicle, under arrest and within the control of the arresting officer, and the passenger is neither involved in the criminal activity which led to the operator's arrest nor an apparent confederate of the operator. The court below held that the passenger's purse could be seized and searched, and the fruits of this search admitted into evidence against appellant, the passenger.[2] We, however, conclude that such a seizure cannot be sanctioned as incident to arrest, and accordingly, vacate judgment of sentence and remand for proceedings not inconsistent with this opinion.[3]

## I.

On February 10, 1977, Trooper Walter Weniger, Jr., observed a white Corvette traveling on Route 73, in Skippack Township, Montgomery County, Pennsylvania. The car, being driven in excess of 50 miles an hour in a 35 mile an hour zone, was pursued and stopped without incident by Trooper Weniger solely for the indicated Motor Vehicle Code viola-

1. "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S.Const. Amend. 4.

2. The operator of the vehicle is not a party in this proceeding.

3. Our disposition of this issue makes it unnecessary for us to reach appellant's further contention that even if seizure of her purse was proper as incident to the lawful arrest of the operator, nevertheless, *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) prevented the officer from searching appellant's purse without a warrant. *See Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *United States v. Milhollan*, 599 F.2d 518 (3d Cir. 1979), *cert. den.*, 444 U.S. 909, 100 S.Ct. 221, 62 L.Ed.2d 144 (1980); *United States v. Garcia*, (5th Cir. August 31, 1979); *Commonwealth v. Timko*, 251 Pa.Super. 442, 448–49, 380 A.2d 861, 865–67 (1977) (Spaeth, J. and Hoffman, J. dissenting).

tion.  Trooper Weniger approached the vehicle from the operator's side and, when standing next to the operator's door, requested that the driver produce his license and registration cards.  The operator responded that he did not have them.  Consequently, Weniger asked the operator to exit the vehicle.  When the operator complied, Weniger observed a clear plastic bag, containing a greenish brown substance, protruding from the glove compartment of the vehicle.  Believing this substance to be marijuana, the trooper immediately placed the operator, who at this juncture remained in Weniger's grasp at the door, under arrest.

During this same period, Trooper Weniger, who was restraining the operator only by holding him by the belt outside of the car, patted the operator down for weapons.[4] This initial search of the person of the operator disclosed no weapons or other instrumentalities of crime;  nevertheless, the trooper, in what he later testified as being a search solely for "weapons," began to search the compact interior of the Corvette.  Initially, while holding the operator by the belt with one hand, Weniger thoroughly searched the operator's side of the vehicle.  This search revealed neither weapons nor further evidence of *any* crime.  Weniger then, without ordering the passenger out of the automobile, reached underneath the passenger's legs and seized a purse. Upon opening the purse, the trooper discovered a "straight razor" measuring four inches in length and immediately informed the passenger-appellant, Ms. Stagliano, that she was under arrest.  A subsequent search of appellant's pocketbook also revealed a controlled substance, methamphetamine.

On May 27, 1977, appellant, having been formally charged with various criminal offenses, filed a pre-trial motion to suppress the evidence discovered in her purse.  At the

4.  The operator offered no resistance to Officer Weniger's pat-down and did not engage in any erratic or violent behavior prior to the search.  *Compare Commonwealth v. Timko*, 251 Pa.Super. 442, 445, 380 A.2d 861, 863 (1977) (operator responded to officer's request with violent and abusive behavior).

suppression hearing, the Commonwealth sought to justify the seizure and search of appellant's purse as a search incident to the operator's arrest under *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The suppression court agreed with the Commonwealth's analysis and upheld the search, as the purse was "within easy reach of the [operator]." Notes of Testimony at 28. Ultimately, Ms. Stagliano in a non-jury trial was convicted of the statutory crimes of possession of a controlled substance,[5] (the methamphetamine only and not the marijuana found in the glove box) and possession of a prohibited offensive weapon.[6] Motions for a new trial and in arrest of judgment having been timely filed and denied, this appeal from appellant's subsequent sentencing ensued.

## II.

Instantly, appellant urges the seizure and subsequent search of her purse cannot stand, as the area under her knees, was not one "within which [the operator] might gain possession of a weapon or destructible evidence." *Chimel v. California,* 395 U.S. 725, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); *Commonwealth v. Bess,* 476 Pa. 364, 367, 382 A.2d 1212, 1214 (1978); *Commonwealth v. Lowry,* 260 Pa.Super. 454, 463–64, 394 A.2d 1019–20 (1978); *Commonwealth v. Ceravolo,* 224 Pa.Super. 464, 465, 307 A.2d 288, 289 (1973).[7] This argument is predicated upon the arresting officer's admission that prior to seizing Ms. Stagliano's purse, he did not harbor any belief that she was involved in any criminal

5. Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–113(a) (1977).

6. Crimes Code, 18 Pa.C.S. § 908 (1973).

7. Although this issue was not included in appellant's written post-verdict motions, the issue has been properly preserved for appellate review. Herein, appellant presented this issue to the court below in its post-verdict memorandum of law, which is contained in the record before this court, and the court below addressed this issue. *E. g., Commonwealth v. Gravely,* 486 Pa. 194, 198, 404 A.2d 1296, 1298 (1979); *Commonwealth v. Slaughter,* 482 Pa. 538, 544, 394 A.2d 453, 456 (1978).

activity or was an apparently armed and potentially dangerous confederate of the arrested operator.[8] The Commonwealth responds to this contention by arguing that the operator was under "limited control," and that the inherent dangers which surround an "automobile" arrest fully justify the seizure of appellant's purse as incident to the lawful arrest of the operator.[9]

**8.** During cross-examination at the suppression hearing, Officer Weniger testified in relevant part:

"Q: Was the young lady [Ms. Stagliano] still in the vehicle at the time that you [Officer Weniger] caused the pat [down] to take place?
A: Yes . . .

Q: So, . . . at the time that you were observing her . . ., she was not doing *anything illegal* in your presence, is that correct?
A: That is correct.

Q: And you had no information within your control at that time to *cause you to believe* that she was *doing anything illegal*, . . .?
A: That's correct.

Q: *You could not see anything* from the position you were in of the contents of the pocketbook without causing it to be looked into . . .?

A: That's correct.

Q: The pocketbook in and of itself did not give the appearance of being a lethal weapon?
A: . . ., no, sir.

Q: And of course, you arrested this young lady after you found something in the purse . . .?
A: That is correct.

Notes of Testimony at 8–9 (emphasis supplied).

**9.** We deem it essential to note precisely what the Commonwealth *does not* argue in support of the seizure and search of appellant's purse. The Commonwealth does not contend that there was probable cause to search the entire automobile itself, and thus, it does not rely upon the rules of *Carrol v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) and *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) to justify the seizure of the purse. *See also Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) (although properly seized "personal luggage" may not be searched without a warrant if it is located outside the immediate control area of the arrestee in the absence of exigent circumstances). Nor does the Commonwealth maintain that the rules of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) support the seizure as being carried out in the process of a stop and frisk of the passenger. *See generally* Caracappa, *Terry v. Ohio and the Power of Police to Accost Citizens Absent Probable Cause to Arrest: A Critical Look at the Pennsylvania Experience*, 15 Duq.U.L.Rev. 499 (1978).

### a.

In evaluating the arguments advanced by counsel, we are initially guided by certain well-settled and elementary principles of Fourth Amendment jurisprudence. In various contexts we have repeatedly acknowledged:

[In ascertaining] "whether a particular search will withstand constitutional scrutiny it must be realized that '[t]he ultimate standard set forth in the Fourth Amendment is reasonableness.' *Cady v. Dombroski*, 413 U.S. 433, 439, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973). It is also true and fundamental that 'searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).

*Commonwealth v. Timko*, 251 Pa.Super. 442, 445–46, 380 A.2d 861, 863 (1977). More directly, we have also reasoned that to validate the warrantless search of an automobile,

[the] officer must have independent probable cause to believe that a felony has been committed by the occupants of the vehicle, or that it has been used in the furtherance of the commission of a felony, or the officer must have a basis for believing that evidence of a crime is concealed within the vehicle, or that there are weapons therein which are accessible to the occupants. . . .

*Commonwealth v. Long*, 262 Pa.Super. 20, 24, 396 A.2d 463, 465 (1978) (per curiam). *E. g., Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727 (1972). As the Commonwealth does not rely upon any of the above rules to justify the instant seizure,[10] our inquiry focuses upon whether the seizing officer had a reasonable basis for believing that Ms. Stagliano's purse was within the arrested operator's grasp.

### b.

While, of course, the question whether a particular search is incident to arrest fundamentally bottoms upon the facts

**10.** *See* notes 8 & 9 *supra.*

of each particular case, appellant vigorously maintains that the rule of *Commonwealth v. Burgos*, 223 Pa.Super. 325, 299 A.2d 34 (1972) governs our judgment in this controversy. In *Burgos*, the police observed the accused commit a summary traffic violation. The accused, at the direction of the officers, pulled his vehicle off the highway. After exiting his automobile, which contained no other passengers, the accused was informed he was under arrest for violating the Motor Vehicle Code. At the time of arrest, the accused was standing between his car and the patrol car. Up to that point, the accused neither offered resistance to the officers' demands, nor engaged in any disruptive or suspicious behavior. During this same time frame, one of the officers went to the passenger side of the seized auto and attempted to open the door. Since the door was locked, the officer asked the accused to open it, which request was complied with. A shaving kit fell to the ground as the door was opened, which prompted the officer to inquire as to its contents. The accused responded by unzipping the bag, thereby exposing to the officer's view a vial of marijuana. On these facts, we held that the search of the bag could not be sustained as being incident to arrest as appellant, prior to the search, "*was standing between his car*" and the police cruiser, and in "*close company*" of one of the officers. *Id.*, 223 Pa.Super. at 329; 299 A.2d at 37 (emphasis supplied).

Framing the issue in this light, we must ascertain whether the search of Ms. Stagliano's purse falls outside the scope of a search incident to arrest, as did the search in *Burgos*. In evaluating the instant facts, a distinguished commentator on the Fourth Amendment, Professor Wayne LaFave,[11] has suggested that our analysis should take into account the following factors: (1) the nature and extent of restraint on the arrestee's person; (2) the location of the arrestee and the officers in relation to the area searched; (3) the obstacles, if any, which the arrestee must overcome in order to reach the container which was searched, and; (4) the num-

11. W. R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 7.1, at 502–03 (1978).

ber of police on the scene and their physical and spatial relation to the number of arrestees or other persons present.

Employing these as benchmarks only, we initially observe that the uncuffed operator was standing outside the door but in the grasp of the arresting officer. The uncuffed operator, therefore, was certainly in the *"close company"* of the arresting officer and under a degree of control within the meaning of *Burgos, supra. Compare United States v. Neumann,* 585 F.2d 355 (8th Cir. 1978) (*both passenger and operator* handcuffed and removed from car; search of small box on driver's side; held: not incident to arrest). With regard to the second factor, the operator was not as far removed from the auto as the arrestee in *Burgos, supra.* Although, as a general proposition, the search of the interior of an auto may be more reasonable where the arrestee is standing by the doors, this alone cannot mean that the passenger or the searched container is inevitably within the reach of the arrestee. *Cf. Burgos,* 223 Pa.Super. at 327–28, 299 A.2d 34; *see Howell v. State,* 271 Md. 378, 382, 318 A.2d 189, 191 (1974) (it is not enough that the arrestee is located in or near the lawfully stopped automobile). Nor as to the third factor is it sufficient in and of itself that the operator's door of the auto is open. While in the abstract this fact might indicate that the operator could gain access to the car it is not determinative of his possible access *to the container which was seized.* Here, prior to the seizure, the operator was within the grasp of the arresting officer who stood between the operator and the Corvette. In order for the seized purse to be within the operator's reach, he would have had to physically remove the officer from his position, reach across the interior to the floor below the passenger, open the closed purse, and finally withdraw whatever weapon might be located therein.[12] Turning to the fourth factor, at the

12. Moreover, we can do nothing but speculate on the passenger's reaction to such a reckless and violent response by the operator. It is not entirely inconceivable that Ms. Stagliano would have chosen to aide the officer, rather than the operator. *See* note 8 *supra.* In a related context, *United States v. DiRe,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948) makes it abundantly clear that the lawful arrest of

moment of seizure the arresting officer knew little more than the fact that the unarmed arrested operator had a passenger in the car. The mere fact that two persons instead of one are present, does not mean *in every case*, that the danger incident to arrest is increased, or for that matter that the party under arrest is any *less under the control of the officer*. The present case is also obviously distinguishable from cases in which the police had prior reason to believe that the arrested operator would be armed,[13] or that the passenger might be armed or likely to conceal a weapon to aid any escape attempt by the arrested operator.[14] The

the operator does not legitimize a personal search of a passenger for evidence against her merely because of her presence in the auto. Thus, the Court remarked: "We are not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which *he would otherwise be entitled." Id.* at 587, 68 S.Ct. at 225 (emphasis added). *See also, United States v. Berryhill,* 445 F.2d 1189, 1193 (9th Cir. 1971) (*officers had knowledge* that operator of auto frequently carried a weapon; passenger's purse with papers protruding from top, seized and searched for weapons; held search permissible as officers *had knowledge* that operator generally had weapons available, and *reasonable for officers to believe* that passenger's purse was a depository for such a weapon).

13. *See* Note 11 *supra. See also* and *compare Pinkney v. United States,* 360 A.2d 35 (D.C.App.1976) (operator, *thought to be armed,* arrested and placed outside driver's door; friend.of operators approaches and walks around back of car after brief conversation with operator; officer looks inside of car and seizes gun located in console on driver's side; held search proper as incident to arrest as weapon might have been reached by acquaintance or operator); *Lee v. State,* 560 P.2d 226 (Crim.App.1977) (operator arrested for *armed robbery* and removed along with *passenger from car*; while passenger not yet cuffed wanted to retrieve items from car; officer searched under passenger's seat and found gun; held search proper as officer had right to believe that weapons could be located in vehicle).

14. *See* and *compare United States v. Matlock,* 558 F.2d 1328 (1977) (operator handcuffed and placed in patrol car; *gun found in passenger's purse prior to time that operator asked passenger to retrieve briefcase from auto*; passenger went to auto and removed briefcase and *began to open it in a manner that officers could not see contents,* nor what was being removed; held search of briefcase sustainable as incident to arrest of operator *as officers had cause to believe that briefcase contained weapons*); *United States v. Manarite,* 448 F.2d 583, *cert. denied,* 404 U.S. 947, 92 S.Ct. 281, 30 L.Ed.2d 264 (1971) (bag containing tear gas gun and ammunition initially found within six inches of defendant; another weapon subsequently found; sei-

seizure at issue here, therefore, was not "specifically aimed at an object the police had reason to believe was in a particular place within appellant's grasp," nor can it be likened to that where a weapon is under a mattress and the accused makes a "furtive gesture" toward it. *Commonwealth v. Bess*, 476 Pa. 367, 368, 382 A.2d 1212, 1214 (1978).

In sum, whereas in this case, the police have the operator of a lawfully stopped vehicle outside the vehicle under arrest, in "close company," and under a degree of control which is sufficient to prevent endangering themselves or destruction of evidence—the police may not justify a seizure of a closed container located on the passenger's side of the vehicle solely as incident to the arrest of the operator, when the police have no reason to believe that the passenger is either involved in any criminal activity or an apparent confederate of the operator. Thus, in as far as the Commonwealth advances no other exception to the Fourth Amendment warrant requirement to justify this seizure, we are constrained to hold, on these narrow facts, that the search of appellant's purse was not constitutionally sanctioned.

In so holding, our Court is not unmindful of the Commonwealth's grave concern for the safety of its law enforcement officers.[15] In this regard, however, whatever dangers an

zure of other contraband at end of table near which several unidentified persons were standing; held seizure of materials at end of table permissible *as officers justified in inferring that the unidentified persons might be accomplices of those arrested*, and therefore, might attempt to procure a weapon on behalf of appellant); *State v. Walbeck*, 15 Wash.App. 871, 552 P.2d 1092 (1976) (high speed chase in which *officer observed front seat passenger bend over as if to conceal something*; operator arrested and placed in patrol car; passenger asked for identification and produced an altered driver's license; held search permissible as suspicious movements of *passenger coupled with other facts observed by officer* substantiated officer's belief that passenger had perhaps concealed a weapon under seat).

15. Statistics compiled over the last ten years indicate that in excess of 1,000 police have been killed in the line of duty. Traffic pursuits and stops lead to approximately 11 deaths of police officers nationwide. F.B.I., Uniform Crime Reports, 289 (1976). *See generally Pennsylvania v. Mimms*, 434 U.S. 106, 115–124, 98 S.Ct. 330, 335–340, 54 L.Ed.2d 331 (1978) (Stevens, J. dissenting, discusses the

officer reasonably infers he confronts from the presence of a passenger in a lawfully stopped auto are amply provided for by the "flexible responses" afforded him by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (stop and frisk), *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (forcible stop for interrogation) and most recently *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1978) (driver of auto lawfully stopped may be ordered from vehicle to facilitate safety of officer). *See generally Torres v. Commonwealth of Puerto Rico*, 442 U.S. 465, 99 S.Ct. 2425, 61 L.Ed.2d 1, (1979) (fundamental Fourth Amendment prohibition against unreasonable seizures and searches cannot be dispensed with merely because of "generalized urgency of law enforcement").

Judgment of sentence is vacated, and case is remanded for a new trial.

current statistics at length), *reversing and remanding* 471 Pa. 546, 370 A.2d 1157 (1977).

By the same token, nor are we unmindful of the appellant's reasonable expectation of privacy as to the contents of her purse. *See Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *United States v. Chadwick*, 433 U.S. 1, 13, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).